[No. 42197.    En Banc.    June 29, 1972.]

HUGH A. HALL et al., *Appellants*, v. CORPORATION OF CATHOLIC ARCHBISHOP OF SEATTLE, *Respondent*.

*Venable & Wing*, by *Richard E. Wing*, for appellants.

*Elvidge, Veblen, Tewell, Bergmann & Taylor*, by *William A. Taylor*, for respondent.

STAFFORD, J.—The jury returned a verdict for defendant Corporation of Catholic Archbishop of Seattle in a personal injury action brought by Mr. and Mrs. Hall. The Halls appeal. For convenience, Mrs. Hall will be referred to as the sole plaintiff.

Plaintiff was a long-time member of the Holy Rosary Catholic Church. After attending mass on Sunday, March 12, 1967, she stood at the top of the stairway at the main entrance to the church, mingling with other parishioners who were either departing or arriving for the next mass.

As she began to descend the stairway at a point approxi-

mately midway between its lateral extremities, plaintiff fell. She remembers falling, but does not remember what caused her to fall. There is no evidence that there was either foreign matter or debris on the stairs at the time. Plaintiff testified:

> I started tumbling, going over. I reached out to try to grab something or someone . . . There was nothing to catch onto, nothing to break the fall . . .

As a result of the fall, she suffered bodily injuries.

At the time of the accident the main stairway of the church was 134 inches wide. The steps had a rise, *i.e.*, height, of 5½ inches and a run, *i.e.*, tread, of 12 inches. A handrail was attached to the side of the building and a masonry balustrade was located on the opposite side, next to the street. There was no intermediate handrail.

The Seattle building code requirement, as set out in instruction No. 5, provides, insofar as pertinent:

> all stairways, *except monumental entrances with rise and run approved as to safety by the Superintendent of Buildings*, shall have walls or well-secured balustrades or guards on each side, and handrails shall be placed on both sides of all stairways over three feet wide. All such stairways eighty-eight (88) inches or more in width shall be provided with one (1) or more continuous intermediate handrails, substantially supported, and the number and position of intermediate handrails shall be such that there are not more than sixty-six (66) inches between adjacent handrails.

(Italics ours.)

Plaintiff alleged that defendant had been negligent (1) in failing to provide handrails as required by the Seattle building code; and (2) in failing to exercise reasonable care under the circumstances. Defendant entered a general denial and affirmatively pleaded as a defense "contributory negligence" and "assumption of a known dangerous condition."

Following a defense verdict plaintiff moved, unsuccessfully, for a judgment n.o.v. and for a new trial. She now appeals.

First, plaintiff assigns error to the trial court's having permitted an architect to testify, as an expert, to the "customary and accepted definition for monumental stairs . . ." The term "monumental" is not defined in the building code. The architect stated, over plaintiff's objection, that:

Monumental stairs are stairs that are designed for ornamental purposes as against utility stairs which are required [for] circulation.

Now, monumental stairs are used for circulation as well. They are normally provided at main entrances or within the building where you want to have an easier grade than is permitted by code.

Assuming the trial court erred by permitting such testimony, the assignment of error is not well taken. Plaintiff proposed, and the trial court gave, an instruction which reads in pertinent part: "You are further instructed that 'monumental' is defined as 'ornamental.'" Since there is no material difference between the definition given by defendant's expert witness and the one in plaintiff's own instruction, the error, if any, was harmless.

Plaintiff complains that, over her continued objection, the trial court permitted the same witness to opine that the steps at the IBM Building and the Seattle Public Library are "monumental stairways" and to imply that since there are no intermediate handrails the superintendent of buildings must have approved the stairways' rise and run as to safety, thereby eliminating the need for intermediate handrails otherwise required by the building code. Such testimony was admitted despite the expert's concession that in the case of "monumental entrances", which require the superintendent of buildings to approve the safety of a stairway's rise and run if intermediate handrails are to be eliminated, he did not know whether the city had a formula for such rise and run, even under his own definition of "monumental stairs".

Plaintiff argues that these opinions, taken as a whole, created an unwarranted inference that the stairways of the

IBM Building and the Seattle Public Library are "monumental stairways" under the code. It created the further unwarranted inference that since neither had intermediate handrails, the superintendent of buildings must have approved the stairways' rise and run as to safety.

Plaintiff also complains that, over continued objection, the expert was permitted to opine that the main entrance of the Holy Rosary Church was "monumental". Admittedly the church was built in an earlier era. There is little question, however, that the cumulative effect of the challenged opinion testimony was to invite the jury to draw an unwarranted inference that the superintendent of buildings would have deemed defendant's steps a "monumental stairway" and having (by pure inference) approved the rise and run of the IBM Building and library stairways, he would also (by pure inference) have approved the rise and run of the church's stairway as to safety, thus negating the intermediate railing requirement.

■ The assignment of error raises a serious problem. Under the Seattle building code *all* stairways 88 inches or more in width must have intermediate handrails not more than 66 inches apart. There is one exception:

> except monumental entrances *with rise and run approved as to safety by the Superintendent of Buildings* . . .

(Italics ours.) Thus, the central issue is, assuming the defendant's stairway actually is "monumental", does the stairway come within the exception by having a rise and run approved as to safety by the superintendent of buildings? Evidence that in some expert's *opinion* the superintendent of buildings would have approved, as to safety, the rise and run of a certain type of steps, is not relevant. This is particularly true where, as here, the expert concedes he did not know whether the city had a formula for the rise and run of "monumental stairs". The issue is one of fact, not a matter of opinion. Either the superintendent of buildings approved for safety the rise and run of the type of steps involved or he did not. The testimony's lack of rele-

vance cannot be further dignified by building inference upon inference, as was done here.

The assignment of error is well taken.

Another matter must be discussed in light of the impending new trial.

Defendant suggests the foregoing testimony of its architect was offered to establish that the rise and run of the steps in question were excepted from the general provisions of the ordinance. The brief states in part:

> From this testimony, the trier of fact could find that the stairs in question would be accepted as to rise and run by the Superintendent of Buildings to meet the monumental requirements.

That being the case, the question arises as to who has the burden of proving whether one is within or without the exception.

It is a well settled rule of statutory construction that exceptions to legislative enactments must be strictly construed. *Schlemmer v. Buffalo R. & P. Ry.*, 205 U.S. 1, 51 L. Ed. 681, 27 S. Ct. 407 (1907); *Canadian Pac. Ry. v. United States*, 73 F.2d 831 (9th Cir. 1934); *State v. Christensen*, 18 Wn.2d 7, 137 P.2d 512, 146 A.L.R. 1302 (1943); *Winfield v. Board of County Comm'rs*, 205 Kan. 333, 469 P.2d 424 (1970); *Emporia v. Williams*, 149 Kan. 860, 89 P.2d 919 (1939); *State v. Ricke*, 160 N.W.2d 499 (Iowa 1968); *see also Insurance Co. of N. America Cos. v. Sullivan*, 56 Wn.2d 251, 352 P.2d 193 (1960). One who claims the benefit of such an exception has the burden of bringing himself clearly within it. *Rheem Mfg. Co. v. Rheem*, 295 F.2d 473 (9th Cir. 1961); *Walling v. Reid*, 139 F.2d 323 (8th Cir. 1943); *Barlow v. Story*, 120 Ga. App. 48, 169 S.E.2d 660 (1969); *State v. Ricke, supra;* 2 F. Horack, Jr., *Statutes and Statutory Construction* § 4936 (3d ed. Supp. 1972).

The foregoing rule has as its corollary the requirement that the *proponent* has the burden of proving every fact essential to the invocation of the exception. *United States v. First City Nat'l Bank*, 386 U.S. 361, 18 L. Ed. 2d 151, 87 S. Ct. 1088 (1967); *Schlemmer v. Buffalo R. & P. Ry.*,

*supra; Rheem Mfg. Co. v. Rheem, supra; Canadian Pac. Ry. v. United States, supra; Winfield v. Board of County Comm'rs, supra; Barlow v. Story, supra; State v. Ricke, supra;* 82 C.J.S. *Statutes* § 382, pp. 889-93 (1953). Whether *defendant* will be able to sustain the burden of proof with properly admissible evidence is a matter to be decided by the jury under proper instructions.

Another basic question before the trier of fact was whether defendant violated a duty to its invitee-parishioner. Plaintiff excepted to instruction No. 9, taken almost verbatim from the text of *Caron v. Grays Harbor County,* 18 Wn.2d 397, 411, 139 P.2d 626, 148 A.L.R. 626 (1943). The challenged instruction reads as follows:

> The duty of the owner to keep the premises safe for an invitee applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risk attendant on the use of the premises, and the owner is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.

This instruction is fraught with the same danger found in others lifted from the general language of a case, the text of which is not designed for use as an instruction. For example, *Caron* dealt generally with the duty of care owed by an owner of land to an invitee. It was not, however, concerned with a specific or additional duty imposed by statute or ordinance. In the instant case, however, we are concerned with whether the property owner complied with, or was exempt from, the specific requirement of an ordinance enacted for the protection of persons using the landowner's premises.

Under the facts of this case, if the jury were to find that the stairs were not "monumental" and/or were to find that the rise and run of the steps had not been approved as to safety by the superintendent of buildings, then even though

the ordinance had been violated, instruction No. 9 would negate the landowner's legislatively imposed duty of care because it provides:

*and the owner is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers,* nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.

(Italics ours.)

In fact, as applied to this case, instruction No. 9 virtually negates the impact of instruction No. 6 which informs the jury that: "The violation, if you find any, of an ordinance, is negligence as a matter of law. Such negligence has the same effect as any other act of negligence." Instruction No. 9 informs the jury, in effect, that even though an ordinance may require the erection of handrails, under certain circumstances, "the owner is under no duty to reconstruct or alter the premises so as to obviate known or obvious dangers."

It is of interest that the trial court also gave instruction No. 8 taken from WPI 120.06. It reads:

An owner or occupier of premises available to the public owes to a public invitee a duty to exercise ordinary care for his safety. This includes the exercise of ordinary care to maintain in a reasonably safe condition those portions of the premises which the invitee is expressly or impliedly invited to use or which he might reasonably be expected to use.

A public invitee is a person who is either expressly or impliedly invited onto the premises of another as a member of the public for a purpose for which the premises are held open to the public.

Standing alone, instruction No. 8 would have given both parties an adequate opportunity to argue their theories of the case. Under the facts of this case, however, instruction No. 9 added a statement of the law that dealt incorrectly with legislatively imposed duties. At best, instruction No. 9 added confusion.

As we stated in *Smith v. Rodene,* 69 Wn.2d 482, 418

P.2d 741 (1966), we have held consistently that it is prejudicial error to give irreconcilable instructions upon a material issue in the case. Where instructions are inconsistent or contradictory on a given material point, their use is prejudicial, for the reason that it is impossible to know what effect they may have on the verdict. *Matteson v. Thiel,* 162 Wash. 193, 298 P. 333 (1931); *Babcock v. M. & M. Constr. Co.,* 127 Wash. 303, 220 P. 803 (1923).

The assignment of error was well taken.

The cause is reversed and remanded for new trial.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, WRIGHT, and UTTER, JJ., concur.