[No. 51554-9.   En Banc.   January 8, 1987.]

ROBERT E. CARUSO, *Respondent,* v. LOCAL UNION No. 690
OF INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS
OF AMERICA, ET AL, *Appellants.*

*Hafer, Price, Rinehart & Schwerin, Hugh Hafer,* and *Richard H. Robblee,* for appellants.

*Frank Conklin, Joseph J. Ganz,* and *Lee, Smart, Cook, Martin & Patterson,* for respondent.

BRACHTENBACH, J.—A labor union appeals from a judgment of $244,000 in favor of a defamation plaintiff, raising instructional, juror challenge, and evidentiary issues. First, did the trial court err in submitting conflicting jury instructions on the elements of a defamation action and the burdens to be met by a defamation plaintiff, and assuming error, is reversal required where the jury nevertheless found the plaintiff met his highest burden and substantial evidence exists to support that finding?

Second, did the trial court commit reversible error in denying defendant's challenge for cause of a juror, where defendant exercised a peremptory challenge as to that juror, and defendant demonstrated no prejudice through his use of a peremptory challenge?

Third, was reversible error committed when the trial court admitted the following evidence: (1) deposition of the individual whose altercation with the plaintiff was the basis for the alleged defamation; (2) testimony by plaintiff's

expert on the issue of causation of plaintiff's business losses; (3) testimony regarding anonymous phone calls received by plaintiff and his employees shortly after publication of the allegedly defamatory article?

We hold that none of the alleged error amounts to reversible error. Accordingly, we affirm the judgment.

In 1969, Robert Caruso opened a retail floor covering business in downtown Spokane known as "Linoleum & Carpet City". Caruso also owned a parking lot located three blocks from his retail business. He rented parking spaces on this lot to customers on a monthly basis. Posted at the lot was a sign reading "Private parking. Violators will be towed."

On several occasions beginning in the summer of 1973, Caruso found access to the parking spaces on his lot blocked by delivery vans and trucks which were not authorized to be on his premises. On one such occasion he encountered a beer truck in which the keys had been left. Unable to locate the driver in nearby taverns, Caruso removed the keys from the truck and took them to his store. From there he called the owner, whose name was printed on the truck, and asked him to collect the keys and remove the vehicle.

In the meantime, the beer truck driver, Aleck Contos, who was a member of Local 690 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 690), had learned that Caruso had the keys. Contos telephoned Caruso. After a heated exchange, Caruso informed Contos that he was going to have the truck towed. Then Caruso called the towing company.

Contos soon appeared at the parking lot, where Caruso was awaiting the tow truck. Contos protested the towing, became physically and verbally abusive, and threatened Caruso with retaliatory action by Local 690. In the midst of the general confusion which followed, Caruso received police intervention. Ultimately the beer truck was towed just far enough to remove it from the lot.

Shortly after these events, Contos related the incident to Mike Olds, an officer of Local 690. A few weeks later, the Washington Teamster, a union newsletter with a statewide circulation at that time of approximately 50,000, carried a "do not patronize" article which is the focus of this controversy. Mike Olds wrote the article. It appeared in the November 9, 1973 newsletter as follows:

Don't [P]atronize Carpet City in Spokane

This is to notify all members of Teamsters Union, Local 690 and all other Teamster and Laboring people in the State of Washington that when traveling to and from the Expo City—"please do not *patronize Carpet City Carpet & Linoleum Shop* at West 518 Main Avenue"—Spokane, Washington," [sic] (Expo City). The reasons for this request are: This Company is continuously harassing the Teamsters and other laboring people who may at some time use the parking facility at this place of business to make a delivery because of the congested traffic problems in Expo City since construction is going on mainly in that area. Someone from this Company removes the keys of such vehicles, have [sic] the equipment impounded and create [sic] many problems for these employees and their employers including the cost of impoundment to those effected [sic].

This company will not cooperate with these drivers when told that they will move their equipment and apologize for parking in this area—their equipment is still impounded.

We request that all Laboring people—Teamsters or otherwise—*do not Patronize Carpet City Carpet & Linoleum Shop.*

Thanks kindly for your *Support.*

Teamsters Union, Local 690.

Upon learning of this article's publication, Caruso attempted to contact Local 690. His calls were not returned and his efforts to meet with the union's business agent were unsuccessful. He then began to receive anonymous threatening phone calls. These calls continued over a period of 6 months to a year and apparently parroted the language of the article in the union newsletter.

Caruso became despondent. He feared for his own safety

and that of his employees. His two key employees began to carry handguns. His business dropped off. Finally, the next year, he moved his retail outlet to a shopping center north of town. He continues to operate at that location.

In December 1974 Caruso filed an action for business interference against Local 690. In April 1980 he amended his complaint to include defamation. Trial to a jury in March 1981 on both causes of action resulted in an award to Caruso of $102,000. The Court of Appeals affirmed in *Caruso v. Local 690, Int'l Bhd. of Teamsters,* 33 Wn. App. 201, 653 P.2d 638 (1982). This court reversed in *Caruso v. Local 690, Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 670 P.2d 240 (1983), holding that plaintiff could not prevail on his business interference claim after *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 73 L. Ed. 2d 1215, 102 S. Ct. 3409 (1982) (boycott of white merchants by a coalition of blacks for purposes of bringing about political, social, and economic change was a constitutionally protected activity). Because the award to Caruso had been based on unsegregated business interference and defamation claims, this court remanded for retrial of Caruso's defamation action.

The retrial, which was held in December 1984, resulted in a jury award of $295,000 to Caruso based on defamation. Since Caruso had previously settled with another defendant, the court entered judgment against Local 690 for $244,000. We accepted direct review.

## I
### JURY INSTRUCTIONS

The jury found that Local 690 was liable for defamation, that the union's actions constituted malice, and that Caruso was damaged as a proximate result of the acts of the union. Local 690 contends that plaintiff failed to carry his burden on all elements of defamation and that certain jury instructions were erroneous. Since most of the jury instruction error assigned by the union relates to specific defamation elements, the alleged error will be analyzed under each element.

"[A] defamation plaintiff must show four essential elements: falsity, an unprivileged communication, fault, and damages." *Mark v. Seattle Times,* 96 Wn.2d 473, 486, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982); *Bender v. Seattle,* 99 Wn.2d 582, 599, 664 P.2d 492 (1983); *Caruso v. Local 690, Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 352, 670 P.2d 240 (1983).

## A
### Falsity

Appellant assigns error regarding the falsity element to an instruction which appears to assign the burden of proving falsity to plaintiff while simultaneously giving defendant the burden of proving substantial truth. In *Mark v. Seattle Times, supra* at 486 this court required a defamation plaintiff to prove falsity. Such a requirement was recently approved by the United States Supreme Court in *Philadelphia Newspapers, Inc. v. Hepps,* ___ U.S. ___, 89 L. Ed. 2d 783, 106 S. Ct. 1558 (1986). In that case, the Court held that "at least where a newspaper publishes speech of public concern, a private–figure plaintiff cannot recover damages without also showing that the statements at issue are false." *Philadelphia Newspapers, Inc.,* 106 S. Ct. at 1559.

Since it is settled that Caruso, as a private defamation plaintiff, has the burden of proving falsity, the challenged instruction is misleading to the extent it appears to assign simultaneous burdens to plaintiffs and defendant on this element.

The standard for sufficiency of jury instructions is set forth in *Brown v. Spokane Cy. Fire Protec. Dist. 1,* 100 Wn.2d 188, 194, 668 P.2d 571 (1983). Jury instructions are not erroneous if they "(1) permit each party to argue his theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law." *Brown,* at 194. Since this instruction was misleading, under *Brown,* it was erroneous.

■■ For erroneous instructions to require reversal,

prejudice must be shown. *Brown,* at 196. Error is not prejudicial "unless it affects, or presumptively affects, the outcome of the trial." *Brown,* at 196. Here, even if the instruction had not been misleading, the outcome would have been different only if Caruso had offered insufficient evidence to carry his burden of proving falsity. There must be "substantial evidence upon which the jury could have rested its verdict." *Lillig v. Becton–Dickinson,* 105 Wn.2d 653, 658, 717 P.2d 1371 (1986). Substantial evidence was defined by this court in *Lillig* as that which is sufficient "to persuade a fair–minded person of the truth of the declared premise.'" *Lillig v. Becton–Dickinson, supra* at 658 (quoting *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982)).

In this case, the evidence was sufficient "to persuade a fair–minded person" that the article's statements were false. Caruso's evidence included testimony of his employees, both of whom testified that Caruso had never before removed keys from any vehicle or had any vehicle towed. Moreover, they testified that Caruso had an exemplary relationship with all the teamsters who delivered to his store. In addition, a local tavern owner, who allegedly told the beer truck driver that Caruso habitually took keys and impounded vehicles, testified that he never made such a statement and had no knowledge of such behavior. Finally, the beer truck driver's deposition contained inconsistencies which bolstered Caruso's assertions of falsity. Since the evidence is sufficient, the outcome would not be different as to the falsity element, so there is no prejudice to defendant. Without prejudice, there is no reversible error.

## B
### Unprivileged Communication
In two unchallenged instructions, the jury was directed (1) that defendant had a qualified privilege to publish the statements, and (2) that defendant could only lose the privilege if it acted with malice. This is a correct statement of the law. *See Bender v. Seattle,* 99 Wn.2d 582, 601, 664

P.2d 492 (1983) (a defamation plaintiff must establish abuse of any qualified privilege by proving defendant acted with knowledge or reckless disregard as to the falsity of a statement). *Accord, Turngren v. King Cy.,* 104 Wn.2d 293, 705 P.2d 258 (1985); *Lillig v. Becton–Dickinson, supra.* In any event, since these instructions are unchallenged, both the existence of a qualified privilege and the malice standard required to establish abuse are the law of the case.

Local 690 assigns error to an instruction which again appears to assign simultaneous burdens of proving the existence, nonexistence, and abuse of a qualified privilege. This is confusing to the extent it suggests that the burden of proving nonabuse of the privilege rests with defendant. Under *Brown v. Spokane Cy. Fire Prótec. Dist. 1, supra,* the confusion makes the instruction erroneous. However, the error is not reversible error under a *Brown* analysis unless the outcome of the trial would be different without the error.

Here, the outcome would not have been different, because the jury in fact found that Local 690 acted with malice. Moreover, there is substantial evidence in the record to support such a finding. Such evidence was offered through the testimony of Mike Olds, the union official who wrote the article in question. Olds testified that he never tried to corroborate the story about Caruso, that he never made any attempts to contact Caruso, and that he had no knowledge of prior complaints of any kind against Caruso. Furthermore, he did not know Caruso's parking lot was located three blocks from his retail store or that there was a second floor covering business in Spokane owned by one of Caruso's relatives (Olds wrote a subsequent article to clarify which one of the Caruso retail stores was not to be patronized by teamsters). This testimony appears sufficient "to persuade a fair–minded person" (the *Lillig* standard) that Olds acted at least in reckless disregard of the truth of the story about Caruso.

## C
### Fault

Local 690 assigns error to various instructions which state that plaintiff must prove fault and that negligence is the proper standard. These instructions represent a technically correct statement of the law: "[i]f the plaintiff is a private individual, a negligence standard of fault applies." *Caruso v. Local 690, Int'l Bhd. of Teamsters, supra* at 352. Since Caruso is unquestionably a private plaintiff, he was properly required to prove negligence.

■ Defendant argues, however, that error occurred because Caruso should have been required to meet a malice standard as to the fault element. This argument is unpersuasive for two reasons. First, the basis for malice, according to defendant, is that the defamation arose from a labor dispute, and thus is accorded "labor libel" treatment. However, a labor dispute is generally limited to controversies concerning "terms, tenure, or conditions of employment, or concerning the association or representation of persons in negotiating . . . conditions of employment." 51A C.J.S. *Labor Relations* § 294 (1967). Terms and conditions of employment were not at the root of this defamation.

Second, the jury found malice for purposes of abuse of a qualified privilege in any event. Once plaintiff proves malice for purposes of the privilege element, it follows logically that he has proven malice for purposes of the fault element as well.

## D
### Damages

Local 690 assigns error to instructions which allowed the jury, if it found for plaintiff, to award damages for lost profits, emotional distress, and harm to reputation. Defendants argue this was error because the jury was not required to separate damages resulting from the "do not patronize" component of the article from damages caused by the defamation.

Defendant is correct that damages to plaintiff's business

flowing from the "do not patronize" request are not compensable. *See Caruso v. Local 690, Int'l Bhd. of Teamsters, supra.* The jury could properly award damages in this action only for defendant's conduct regarding defamation.

The instructions given the jury referred in many instances to the "conduct" of the defendant. "Conduct", as referred to by the instructions, could be interpreted to include both the printing of the noncompensable "do not patronize" request and the compensable printing of the defamatory statements. We do not find, however, that the use of these instructions constitutes reversible error.

■ Jury instructions are to be considered in their entirety. *Brown v. Spokane Cy. Fire Protec. Dist. 1, supra.* Here, instruction 10 made it clear that this action was for defamation, and that "false statements of fact" must be a proximate cause of said damages. In addition, instruction 25 informs the jury that publication of a "do not patronize" request is not actionable as long as it is lawful. Finally, instruction 2 makes it clear that "factual statements contained in the articles" are those alleged to be defamatory. Since a request would logically not be considered a "factual statement", the request not to patronize could not be interpreted as a defamatory statement. These instructions taken as a whole allowed the jury to award damages for defamation only.

A final jury instruction challenged by defendant relates not to defamation elements but to whether the article contained statements of fact or opinion. Defendant argues that if an instruction had properly characterized much of the article as opinion, the statements would have been nonactionable.

■ Even assuming the statements were opinions, this court's recent decision in *Dunlap v. Wayne,* 105 Wn.2d 529, 716 P.2d 842 (1986) disposes of defendant's argument that opinion is not actionable. *Dunlap* set forth three considerations for determining when opinion is actionable: (1) nature of the medium, (2) nature of the audience, (3) implication of undisclosed facts.

First, in this case the medium was the union newsletter. Its purpose presumably was to impart objective, helpful information. It was not akin to an editorial page. Second, the newsletter's audience had no reason to expect exaggeration. Readers were likely to believe the information printed therein, and they were likely to expect the publishers to act in the best interests of the readership. Finally, the article contained implication of undisclosed facts. The statements implied repeated acts and patterns of obstreperous behavior by plaintiff and suggested a pattern of antagonistic behavior toward teamsters.

Under *Dunlap,* even if these statements were opinion they were nonetheless actionable. Local 690's challenge to the instruction regarding actionable opinion is thus without merit.

## II
### JUROR CHALLENGE

During voir dire examination, one prospective juror stated that she thought unions in this country were "too strong." She also said she and her husband had had unpleasant experiences with unions. As a result of these statements, defendants challenged her for cause. When questioned by the court as to her prejudices, the juror answered she felt she could be a fair and impartial juror, notwithstanding some of her anti–union feelings. Based on this dialogue, the judge determined there was insufficient justification to excuse her for cause. Local 690 then exercised a peremptory challenge to prevent her from being seated.

■ *State v. Latham,* 100 Wn.2d 59, 667 P.2d 56 (1983) controls this issue. *Latham* states that a challenge for cause may be made for either implied or actual bias. However, even where a juror should have been removed for cause, the use of a peremptory challenge cures the error. The challenging party must then show that use of the peremptory challenge actually prejudiced his case.

Whether the juror in this case should have been removed

for actual bias is arguable. Defendant, however, exercised a peremptory challenge, thereby curing any error. Moreover, defendant has demonstrated no prejudice through forced use of a peremptory challenge. Under *Latham,* then, there is no error.

## III
### EVIDENTIARY ERRORS

■ Defendant alleges three separate evidentiary errors. The admission or refusal of evidence is within the trial court's discretion and the court will only be reversed for abuse of discretion. *Maehren v. Seattle,* 92 Wn.2d 480, 488, 599 P.2d 1255 (1979), *cert. denied,* 452 U.S. 938 (1981).

### A
### Contos' Deposition

Aleck Contos, the beer truck driver whose altercation with Caruso gave rise to the defamation, was apparently unavailable to testify at trial. His entire deposition was allowed to be read into the record, with one minor exception not relevant here.

Contos told his version of the parking lot dispute in his deposition. This testimony would have allowed a jury to conclude that he was a man with a volatile temper who thought Caruso should have allowed him free access to the parking lot. The jury could also have inferred that Contos did not truthfully relate his encounter with Caruso to Mike Olds, author of the newsletter article.

Local 690 objected to the admission of those portions of the deposition which revealed Contos' actions toward Caruso. The union argued that such testimony was irrelevant to the establishment of malice on its part and even if relevant, it was unfairly prejudicial. The trial court ruled the entire deposition was relevant.

ER 401 defines relevant evidence as that having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Here, Contos' testimony was relevant to the question of falsity,

because what Contos experienced with Caruso and what he later told the union gave rise to the defamation. Since falsity is an element to be proved in this case, its existence is certainly a "fact of consequence." Thus, this evidence is relevant.

ER 403 authorizes the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Here, the danger was that the jury would see Contos, rather than Local 690, as the defendant. However, the union distanced itself from Contos through trial testimony. Moreover, Contos did not testify in person. Finally, extensive arguments on this issue were made by both parties and carefully considered by the trial judge. Under these facts, the probative value of Contos' deposition outweighed any unfair prejudice to Local 690.

## B
### Expert Testimony

Plaintiff presented an expert on the issue of business loss who had impressive educational and experience qualifications. The expert testified extensively and explained what losses Caruso had sustained and how he, the expert, had ascertained those losses. Finally, plaintiff's counsel asked the expert how he might determine a possible cause for such a business loss:

> Q As I understand your testimony, in answer to . . . [the] question [of defendant's counsel] you did go through this process of elimination; is that right?
> A That's correct. I tried to look at retail sales, so forth.
> Q Did you eliminate all of the potential causes for the drops that you have indicated?
> A To the best of my ability, I eliminated all but one.
> Q Which one?
> A The one—the action on the Teamster's part that created some managerial problems for [Caruso] . . .

Verbatim Report of Proceedings, at 845–46. Counsel for Local 690 did not object during this dialogue. Following the expert's final answer, counsel approached the bench and defendant requested a mistrial due to unfair surprise.

The trial judge refused both a mistrial and striking of the testimony. He found that the direction in which the questioning was going was clear, and that there was sufficient time for an objection to be raised prior to the time the answer was given. In addition, the record reveals that defendant later asked its business expert the same question. Moreover, instruction 6 cautioned the jury that it was to weigh the testimony and judge the credibility of all witnesses, including experts. In light of these facts, there was no abuse of trial court discretion in allowing plaintiff's expert's testimony on causation.

## C
### Anonymous Phone Calls

Caruso and his two key employees testified to receiving anonymous threatening phone calls at Caruso's store. Testimony revealed that the calls began within 1 week of publication of the article and continued with some frequency for 4 to 5 months and intermittently for 4 or 5 more months. All three of these witnesses testified that the calls were abusive and intimidating and placed them in fear for their personal safety.

Defendant argued against admission of testimony regarding these calls, contending this evidence was irrelevant because the callers could not be linked to Local 690. Plaintiff contended that evidence of the calls was relevant to damages. The calls contributed to the anguish of plaintiff, to his preoccupation with his own safety and that of his family and employees, and to the drop in his business.

The trial court admitted the evidence, reasoning that a link, if any, between Local 690 and the callers was for the jury to find. To guard against unfair prejudice, the court allowed an instruction which limited the use to be made of evidence of the calls.

ER 402 requires that evidence be relevant to be admissible. There is no question that evidence of the calls was relevant. These calls contributed greatly to the depression and anxiety of the plaintiff. Such depression and anxiety, in

turn, contributed to his business loss. Business losses made up a portion of the damages to be established by plaintiff.

ER 403, discussed above, would exclude otherwise relevant evidence which is unfairly prejudicial. Here, Local 690's concern was that the jury would infer that the union initiated or sanctioned the anonymous calls. But there was no trial testimony which would imply such sanctioning or even knowledge. Moreover, counsel for plaintiff never tried to establish such a link. Finally, an instruction informed the jury that evidence of the calls was for a limited purpose. Under these circumstances, it was not an abuse of discretion for the trial judge to admit this evidence.

Under the foregoing analysis, we find no reversible error. The judgment is affirmed.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, and GOODLOE, JJ., concur.

ANDERSEN, J. (dissenting)—I agree with the majority that the trial court's instruction 10, the burden of proof instruction given to the jury in this case, is misleading and erroneous because it assigns simultaneous burdens of proving falsity to plaintiffs and defendants. I also agree with the majority that the same instruction is misleading and erroneous because it assigns simultaneous burdens of proving the existence, nonexistence and abuse of a qualified privilege. I disagree with the majority's conclusion, however, that these two errors are harmless. I would conclude that the burden of proof instruction's totally erroneous statements regarding qualified privilege, coupled with its falsity error, constitute prejudicial error and would remand the case for a new trial before a properly instructed jury.

As I perceive them, the rules regarding the burden of proving a privileged communication in a defamation case are as follows. The defendant has the burden of establishing a privileged publication by proving a recognized public or private interest that would justify the utterance of the

words.[1] Whether or not a privilege exists at all is an issue of law for the court to decide.[2] If the facts are in dispute, then the jury will be called upon to consider the evidence and pass upon the issues thus raised.[3] It is for the court, however, to decide whether the facts found by the jury made the publication privileged or to instruct the jury as to what facts they must find to hold the publication privileged.[4] Once the existence of the privilege is established, the burden is upon the plaintiff to prove that it has been abused by excessive publication, by use of the occasion for an improper purpose or by lack of belief or grounds for belief in the truth of what is said.[5]

In this case, the court did observe these rules in part when it instructed the jury as follows:

> You are instructed that the Defendant has a qualified privilege to publish and distribute the articles to Teamster Union members.
>
> In order to overcome that privilege, Plaintiff must show by clear and convincing evidence that the Defendant abused its privilege, and that the Defendant knew the statements were false, or acted in reckless disregard of whether the statements were true or not.
>
> Reckless conduct is defined in Instruction No. 16.[6]

The trial court's instruction 10, however, is inconsistent and contradictory with the foregoing correct statement of the law. It reads:

> The plaintiff has the burden of proving each element of the cause of action for defamation, which are as

---

[1] W. Prosser, *Torts* § 115, at 796 (4th ed. 1971).

[2] W. Prosser, at 796; Restatement (Second) of Torts § 619, comment *a*, at 316 (1977).

[3] W. Prosser, at 796; Restatement (Second) of Torts, at 316.

[4] Restatement (Second) of Torts, at 316.

[5] W. Prosser, at 796.

[6] Instruction 18.

follows:

1. That the defendant made false statements of fact concerning the plaintiff.

2. That the defendant made this statement to a third party without privilege to do so.

3. That the defendant was at fault, amounting to at least negligence.

Plaintiff has the burden of proving that the defendant made one or more statements alleged by the plaintiff, that the plaintiff suffered damages as alleged and that the statements were a proximate cause of said damages.

If the plaintiff fails to prove any one of the foregoing elements, then your verdict must be for the defendant on plaintiff's claim for defamation. If, however, plaintiff proves his case, the defendant has the burden of proving the following defenses:

1. That the statements of fact were substantially true; truth is a complete defense to an action for defamation.

2. That the defendant had a qualified privilege to make these statements.[7]

It is impossible to know what effect inconsistent or contradictory instructions may have upon a jury.[8] Instruction 10 raised the issue of whether a privilege existed and assigned simultaneous burdens of proof on the issue, while instruction 18 treated the existence of a privilege as settled and assigned plaintiff the burden of proving its abuse. Instruction 10 is not a correct statement of the law and could well have served to nullify instruction 18 in the jurors' minds. I would hold that instruction 10, the erroneous burden of proof instruction, imparted prejudicial error into the case requiring a new trial.

Accordingly, I dissent.

CALLOW and DURHAM, JJ., concur with ANDERSEN, J.

---

[7]Instruction 10.

[8]*Hall v. Corporation of Catholic Archbishop*, 80 Wn.2d 797, 804, 498 P.2d 844 (1972); *Matteson v. Thiel*, 162 Wash. 193, 197, 298 P. 333 (1931).