IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| COLLEEN LONG, an individual, and EVERGREEN ATHLETICS, LLC, a Washington limited liability company, | ) ) ) ) | No. 81256-0-I |
| Appellants, | ) ) | |
| v. | ) ) | |
| SANDRA FLORES, an individual, JAMES EVANS, an individual, and EMERALD CITY GYMNASTICS ACADEMY, INC., a Washington corporation, | ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | |

VERELLEN, J. — Colleen Long and Evergreen Athletics, LLC challenge the

trial court's grant of summary judgment in favor of Sandra Flores, James Evans,

and Emerald City Gymnastics Academy, Inc. Long argues that she established a

prima facie case sufficient to proceed to trial on her claims for tortious interference,

defamation, conspiracy, Consumer Protection Act violations, and abuse of

process. But because the evidence presented on summary judgment fails to

establish genuine issues of material fact as to any of her claims, summary

judgment was proper.

Therefore, we affirm.

FACTS

In 2009, Colleen Long began coaching at Eastside Gymnastics Academy. The business was owned by one person, and gymnastics coach James Evans owned the brand name. A few years later, Long purchased the business.

In 2015, Long shifted the focus of the gym from recreation to developing highly skilled athletes who could compete in the Junior Olympics. On June 1, 2016, Evans posted a statement on the gym's website explaining the change. The tension between recreational and competitive philosophies ultimately led to several coaches leaving the gym, including Evans, Kassidee Ellis, and Elliot Heil. Evans told Long that she could no longer use the Eastside Gymnastics brand name. Long rebranded Eastside Gymnastics to Tech Gymnastics.

Months later, Sandra Flores, the owner of Emerald City Gymnastics Academy, heard that Long had told her staff she had proof that Flores had harmed children. Flores sued Long for defamation. In response to a subpoena, Evans provided information. The court granted Flores's motion to compel, which required Long to turn over her electronic devices. Flores dismissed the lawsuit.

In September 2016, Long hired Leonard Lewis, Jr. to coach cheer at Tech Gymnastics. Lewis did not reveal that he was a registered sex offender and had been convicted of two counts of attempted second degree possession of depictions of a minor engaged in sexually explicit conduct. Lewis used his father's Social Security number to pass the U.S. All Star Federation (USASF) background check required by Tech Gymnastics.[1]

---

[1] USASF is the cheer division of United States of America Gymnastics, the national governing body for gymnastics in the United States.

2

A year later, a Mercer Island police officer informed Long that Lewis was on probation and asked whether Lewis had told her about his convictions. Long responded that Lewis had not told her. Lewis resigned in February of 2018.

On March 6, 2018, Lewis was charged with second degree possession of depictions of a minor engaged in sexually explicit conduct. About a week later, a Department of Homeland Security agent contacted Long while investigating federal charges against Lewis. Long filed a sexual misconduct report on Lewis with United States of America Gymnastics (USAG).

Around the same time, a rumor spread that someone wrote a letter to the Special Olympics Committee in an attempt to prompt the committee to revoke Flores's appointment as chairperson. In response, Flores's counsel sent the Special Olympics Committee an e-mail inquiring why Flores had been removed from the committee. The e-mail accused Long of being the known "ringleader" in a conspiracy against Flores.[2]

Later that month, a parent accused Flores of bullying. Flores sent an e-mail to USAG's counsel, Mark Busby, denying the allegations. The e-mail also referenced her prior suit against Long, stating that "In 2017, a judge ordered the computers and phones of Colleen Long and Tech gymnastics to be confiscated."[3] The parent withdrew his complaint.

On June 13, 2018, Flores saw a report on KIRO 7 about Lewis's arrest, and she e-mailed Busby stating she was concerned Long knew about Lewis's

---

[2] Clerk's Papers (CP) at 342.

[3] CP at 637.

convictions before she hired him. The next day, the Department of Homeland Security issued a public request for assistance in identifying Lewis's victims. USAG suspended Long's membership for two weeks.[4] After her suspension, Long met with parents to discuss her suspension and the allegations against Lewis.

That August, KIRO 7 reported that two of Lewis's victims came forward, and one victim accused Lewis of molesting him at a Redmond gym several years earlier.[5] Flores e-mailed Busby and other USAG employees, stating, "It is now confirmed [Lewis] raped a boy here locally last year. So upset, not because it's Colleen, but because it's a sport I love that looks stupid and incompetent."[6] Flores also e-mailed Busby expressing her dissatisfaction with the short duration of Long's suspension. Long's suspension was not extended. Long rebranded Tech Gymnastics to Evergreen Athletics LLC.

On September 26, 2018, Long and Evergreen Athletics sued Flores, Evans, and Emerald City Gymnastics Academy alleging claims of tortious interference, defamation, conspiracy, Consumer Protection Act violations, and abuse of process. The court granted Flores, Evans, and Emerald City Gymnastics summary judgment.

Long and Evergreen Athletics appeal.

---

[4] Long was originally suspended for three weeks but after two weeks, her membership was reinstated.

[5] On February 14, 2019, Lewis pleaded guilty to transportation of child pornography.

[6] CP at 506.

ANALYSIS

I.  Tortious Interference

Long argues that she established a prima facie case that Flores and Evans tortuously interfered with Evergreen Athletics.

We review an order granting summary judgment de novo.[7]  Summary judgment is appropriate "'only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'"[8]  We view the evidence in the "light most favorable to the nonmoving party."[9]  We will affirm summary judgment "only if, from all the evidence, reasonable persons could reach but one conclusion."[10]  "In opposing summary judgment, a party may not rely merely upon allegations or self-serving statements but must set forth specific facts showing that genuine issues of material fact exist."[11]

To establish a prima facie claim of tortious interference with a business expectancy, the plaintiff must show: "'(1) the existence of [a valid] business expectancy; (2) that [the defendant] had knowledge of the [expectancy]; (3) an intentional interference inducing or causing [the termination of the] expectancy; (4) that [the defendant] interfered for an improper purpose or used improper

---

[7] Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012) (citing Mohr v. Grantham, 172 Wn.2d 844, 859, 262 P.3d 490 (2011)).

[8] Bavand v. OneWest Bank, 196 Wn. App. 813, 824-25, 385 P.3d 233 (2016) (quoting Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014)).

[9] Loeffelholz, 175 Wn.2d at 271 (citing Mohr, 172 Wn.2d at 859).

[10] Petcu v. State, 121 Wn. App. 36, 55, 86 P.3d 1234 (2004) (citing Wood v. Battle Ground Sch. Dist., 107 Wn. App. 550, 557, 27 P.3d 1208 (2001)).

[11] Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 157, 52 P.3d 30 (2002) (citing CR 56).

means; and (5) resultant damages.'"[12] "[I]nterference with a business expectancy is intentional 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'"[13]

It is undisputed that Long had a valid business expectancy in the success of Evergreen Athletics and that Flores and Evans were aware of that expectancy. But Long fails to establish a genuine issue of fact whether Flores and Evans intentionally interfered with Evergreen Athletics.

Long contends that Flores intentionally interfered with her gym by recruiting her students and employees. But Long admitted that she could not identify a single gymnast that left Evergreen Athletics because of Flores. Most of the coaches who left Evergreen Athletics did so for reasons unrelated to Flores. And Long admitted that two coaches allegedly recruited by Flores, Kassidee Ellis and Elliot Heil, were not of "significant importance" to her gym.[14] Long fails to demonstrate Flores improperly interfered with or damaged her gym.

Long also argues that Flores intentionally interfered with her USAG membership by reporting Lewis to USAG. In March 2018, Long filed a sexual misconduct incident report against Lewis with USAG. Months later, Flores e-mailed Busby stating that she was concerned that Long knew about Lewis's prior convictions before she hired him. On June 15, 2018, after DHS issued its

---

[12] Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 768, 436 P.3d 397 (2019) (alterations in original) (quoting Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 351, 144 P.3d 276 (2006)).

[13] Life Designs Ranch, Inc. v. Sommer, 191 Wn. App. 320, 337, 364 P.3d 129 (2015) (quoting Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 158, 52 P.3d 30 (2002)).

[14] CP at 189-92.

news release seeking help in identifying Lewis's victims, USAG suspended Long. Long does not establish that Flores intentionally interfered with her gym when Long self-reported her hiring of Lewis months before Flores e-mailed Busby.[15]

Long argues that Evans intentionally interfered with her gym by posting a statement on the gym's website encouraging coaches and athletes to leave Long's gym. But the post stated: "We respect and support the best decision each of you can make for your own family and athletic future. We refuse to put kids and families in the middle of this situation, and so, have never asked anyone to take a side or leave the gym."[16] And Evans had an interest in the gym's reputation and management because, at the time, he owned the brand name for Long's gym. Because Evans's post did not encourage "anyone to take a side or leave the gym,"[17] Long fails to establish a viable intentional interference claim against Evans.[18]

---

[15] Long also argues that Flores tortuously interfered with Evergreen Athletics because Flores failed to individually notify her that a "fraud" was looking for a coaching position, and Flores was the chair of the Washington state section of USAG. USAG told Flores to warn gym owners, and Flores posted the information to the Washington professional gymnastics members Facebook page. Long fails to cite any authority that Flores had an obligation to notify each gym owner individually. Long's claim that Flores intentionally withheld information from her is not compelling.

[16] CP at 252.

[17] Id.

[18] Long also contends that Evans intentionally interfered with her business expectancy by forwarding his e-mail disputes with Long to other employees, but the record on appeal does not support her assertion.

## II. Defamation

Long argues that she established a prima facie case of defamation per se sufficient to proceed to trial.

"To establish a prima facie defamation claim, the plaintiff must show (1) that the defendant's statement was false, (2) that the statement was unprivileged, (3) that the defendant was at fault, and (4) that the statement proximately caused damages."[19]  "To defeat a defense summary judgment motion in a defamation action, the plaintiff must raise a genuine issue of material fact as to all four elements of the claim."[20]  "'The prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists.'"[21]  And the defamatory statement must be a statement of fact, not of opinion.[22]

First, Long argues that Flores's counsel's statements to the Special Olympics Committee were defamatory.  Long must establish a genuine issue of fact whether Flores's statements were "provably false."  A statement is provably false if the statement is substantially false or if the "gist" of the story is false.[23]

Here, Flores's counsel wrote an e-mail to the Special Olympics Committee inquiring why Flores had been removed from the committee.  In the e-mail,

---

[19] Alpine Indus. Computers, Inc. v. Cowles Pub. Co., 114 Wn. App. 371, 378, 57 P.3d 1178 (2002), amended, 64 P.3d 49 (2003) (citing Caruso v. Local Union No. 690, 107 Wn.2d 524, 529, 730 P.2d 1299 (1987)).

[20] Id.  (citing LaMon v. Butler, 112 Wn.2d 193, 197, 7709 P.2d 1027 (1989)).

[21] Life Designs Ranch, Inc. v. Sommer, 191 Wn. App. 320, 330, 364 P.3d 129 (2015) (quoting id.).

[22] Id. at 330-31.

[23] Mohr v. Grant, 153 Wn.2d 812, 825, 108 P.3d 768 (2005).

Flores's counsel blamed Long for being the "ringleader" in a conspiracy to damage Flores and ensure her position was withdrawn. But because Flores's counsel's statements were merely statements of opinion, they were not defamatory.[24]

Second, Long contends that Flores's repeated statements to USAG employees, that a "judge confiscated Long's computers," were defamatory.[25] But Flores's statements were not "provably false." In Flores's defamation lawsuit, the court granted Flores a motion to compel requiring Long to produce electronic devices "for forensic imaging."[26] Because Flores's statements were not "provably false," they were not defamatory.

Third, Long argues Flores defamed her by telling USAG, "numerous professional members and the media" that Long "knowingly employed a registered sex offender and . . . rapist."[27] Before Lewis resigned, all Long knew was that he was on probation for a sexual offense conviction and that he failed a background check. And when KIRO 7 reported that Lewis had molested a victim, Flores misconstrued the report by e-mailing USAG employees stating that Lewis was a known rapist. There is evidence that Flores's statements were substantially false.

But Long must establish that Flores's statements to USAG were unprivileged. A qualified privilege exists when the "publication involves a private

---

[24] The record on appeal does not contain Flores's counsel's letter to the Special Olympics Committee. But Long stated that she has had no business with the Special Olympics Committee in the past and does not anticipate any business with the organization in the future.

[25] Appellant's Br. at 40.

[26] CP at 965.

[27] Appellant's Br. at 40.

person but concerns a matter of public interest or concern."[28] "'A qualified privilege protects the maker from liability for an otherwise defamatory statement unless it can be shown that the privilege was abused.'"[29] Here, Flores's statements involved Long's employment of Lewis, which was a matter of public interest because Lewis was a coach with sex offense convictions.

Long appears to argue that Flores's privileged statements lost their protection because they were made with actual malice. "'[A]n actual malice standard of fault [applies] where a private figure plaintiff is allegedly defamed by a statement pertaining to a matter of public concern.'"[30] "The standard for finding actual malice is subjective and focuses on the declarant's belief in or attitude toward the truth of the statement at issue," not the declarant's personal hostility toward the plaintiff.[31]

Here, in her deposition, Flores admitted that she misinterpreted the KIRO 7 news report when she e-mailed USAG employees stating that Lewis had "raped a boy."[32] But when Flores wrote the e-mail, she believed in the truth of her statements. Long failed to present clear and convincing evidence supporting a genuine question of fact of actual malice.[33]

---

[28] Momah v. Bharti, 144 Wn. App. 731, 743, 182 P.3d 455 (2008).

[29] Story v. Shelter Bay Co., 52 Wn. App. 334, 338, 760 P.2d 368 (1988) (citing Bender v. Seattle, 99 Wn.2d 582, 600, 664 P.2d 492 (1983)).

[30] Momah, 144 Wn. App. at 744 (quoting Alpine Indus. Computers, 114 Wn. App. at 393).

[31] Story, 52 Wash App at 343; Herron v. KING Broad. Co., 109 Wn.2d 514, 522, 746 P.2d 295 (1987).

[32] CP at 399-401.

[33] Long also argues that Evans's website posting constituted defamation per se. But the website posting reflects Evans's opinions on the gym's leadership,

III.  Conspiracy

Long argues that she presented "uncontested evidence" that Flores and Evans conspired against her.

To establish liability for a conspiracy a plaintiff must prove "by clear, cogent and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy."[34]  "Mere suspicion or commonality of interests is insufficient to prove a conspiracy."[35]

First, Long asserts that Evans and Flores had an agreement to recruit her employees and "shut her gym down."[36]  But Long admitted that only two coaches were allegedly recruited by Flores.  And Evans explained that he was frustrated with Long's management, which culminated in him leaving Long's gym and his website posting.  Long fails to establish any genuine issue that Evans and Flores had an agreement to recruit her employees.

Second, Long contends that Flores and Evans conspired in suing her for defamation.  But when Flores sued Long for defamation, Evans did not join the lawsuit.  And Evans provided Flores with information only in response to a

---

reputation, and management.  And as discussed, statements of opinion are not defamatory.

[34] Wilson v. State, 84 Wn. App. 332, 350-51, 929 P.2d 448 (1996).

[35] Id. at 351.

[36] Appellant's Br. at 43-45.

subpoena. Long does not establish that Evans and Flores had an agreement to sue her for defamation.

IV. Consumer Protection Act

Long argues that the trial court erred in dismissing her Consumer Protection Act claim because she provided evidence to establish each element.

The Consumer Protection Act prevents "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," but the unlawful acts are "limited to those practices which are injurious to the public interest."[37] The alleged acts must have the "'capacity to deceive a substantial portion of the public.'"[38]

Here, Long fails to show how Flores's acts impacted the public interest. Long appears to argue that she can satisfy the public interest element based upon Flores's bullying because she "threatened suits against parents at her own gym, former employees, and coaches at other gyms."[39] But the allegations of bullying against Flores were from one parent in particular, who ultimately retracted his complaint. Because Long fails to establish that Flores's actions had the capacity to deceive the general public, the court did not err in dismissing Long's Consumer Protection Act claim.

---

[37] RCW 19.86.020; Keyes v. Bollinger, 31 Wn. App. 286, 289, 640 P.2d 1077 (1982).

[38] Sing v. John L. Scott, Inc., 134 Wn.2d 24, 30, 948 P.2d 816 (1997) (quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 785, 719 P.2d 531 (1986)).

[39] Appellant's Br. at 46.

V.  Abuse of Process

Long contends that the trial court erred in dismissing her abuse of process claim because she provided evidence to establish each element.

To establish an abuse of process, the plaintiff must show: "'(1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.'"[40]  "'[T]here must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit.'"[41]  "'[T]he mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process.'"[42]

Flores sued Long for defamation because Long told her staff that Flores had harmed children.  Even if Flores had a malicious motive in bringing her defamation lawsuit seeking to obtain and then use discovery "to embarrass, intimidate and harass others,"[43] Long fails to establish she used the suit "'to accomplish an end not within the purview of the suit.'"[44]  The court did not err in dismissing Long's abuse of process claim.

---

[40] Batten v. Abrams, 28 Wn. App. 737, 745, 626 P.2d 984 (1981) (quoting Fite v. Lee, 11 Wn. App. 21, 27, 521 P.2d 964 (1974)).

[41] Hough v. Stockbridge, 152 Wn. App. 328, 345, 216 P.3d 1077 (2009) (alteration in original) (quoting id. at 748).

[42] Id. (emphasis and internal quotation marks omitted) (quoting Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.), 119 Wn. App. 665, 699, 82 P.3d 1199 (2004), amended on recons.,  (Mar. 2, 2004)).

[43] Appellant's Br. at 48.

[44] Hough, 152 Wn. App. at 343 (quoting Batten, 28 Wn. App. at 748).

Because Long failed to establish any viable claims of tortious interference, defamation, conspiracy, Consumer Protection Act violations, or abuse of process, summary judgment in favor of the defendants was appropriate.

Therefore, we affirm.

_____

WE CONCUR:

_____     _____
                                     Mann, C.J.