182 P.3d 455 (2008)
Dennis MOMAH, M.D., a single man, Appellant,
v.
Harish BHARTI, Anoop Bharti; and Law Offices of Harish Bharti and Associates, LLC, a Washington State Limited Liability Company, Respondent.
Nos. 59079-1-I, 59271-8-I.
Court of Appeals of Washington, Division 1.
April 28, 2008.
*459 Timothy Kent Ford, Attorney at Law, Mark Alan Johnson, Johnson & Flora PLLC, Seattle, WA, for Appellant.
Charles Kenneth Wiggins, Wiggins & Masters PLLC, Bainbridge Island, WA, Howard Mark Goodfriend, Edwards Sieh Smith & Goodfriend PS, Seattle, WA, for Respondent.
Stephen A. Smith, Kirkpatrick & Lockhart Preston Gates, Seattle, WA, for amicus curiae.
APPELWICK, J.
¶ 1 Dennis Momah sued Bharti, a plaintiff's attorney for actual damages based on defamation. The trial court concluded that Bharti's defamatory statements were protected by a public interest privilege derived from Alpine Indus. Computers, Inc. v. Cowles Publishing Co., 114 Wash.App. 371, 57 P.3d 1178 (2002), and applied an actual malice standard of fault. Bharti was granted summary judgment. Alpine creates no such privilege. The statements were not otherwise privileged. The proper standard of fault at summary judgment for defamation of a private party on an issue of public interest, where actual damages are sought, is negligence which is to be established by a preponderance of the evidence. We reverse and remand.

Facts
¶ 2 Dennis Momah and his twin brother, Charles Momah are both physicians. Charles[1] was accused and subsequently, convicted of rape and sexual abuse of several patients in his OB/GYN practice. In addition, several of those patients brought civil suits against Charles. Harish Bharti is the attorney who filed these civil suits.
¶ 3 On September 19, 2003, the King County Journal published comments attributed to Bharti. Noel S. Brady, Bharti Published Comments, KING COUNTY J., Sept. 19, 2003. Bharti is quoted as saying, "Several of the victims claim that Charles Momah was permitting Dennis Momah, who is a physician, *460 to come and violate them without their permission." Id. And, "He was going there impersonating Charles Momah." Id. The King County Journal published another article on September 24, 2003, again quoting Bharti. Brady, supra, Sept. 24, 2003. "Two twin brothers were taking turns having sex with patients on a regular basis without the patients' knowledge that they were two different people. . . . They started to believe that not only did they have a license to practice medicine, they had a license to rape women." Id. On September 30, Bharti and a client appeared on The Early Show. In response to a question about the State filing charges against Momah, Bharti responded, "Yes, he's  the  Dennis Momah is a defendant." The Early Show: The Dennis Momah Impersonation (CBS News television broadcast Sept. 30, 2003). At some point, Bharti posted the King County Journal articles on his website, and they remained there through at least November 2004.
¶ 4 On behalf of clients, Bharti filed numerous civil suits and lodged complaints with the Washington Medical Quality Assurance Committee (MedQAC) against Momah. The complaints included allegations of malpractice, indecent liberties, assault and battery, and intentional infliction of emotional distress. Bharti eventually dismissed the suits against Momah. Bharti claimed he dismissed the lawsuits to get more evidence against Momah. Momah has never been charged with any criminal activities. MedQAC has also cleared Momah of any wrongdoing, after receiving proof that he was out of town during all the alleged incidents.
¶ 5 In November 2004, Momah filed a defamation suit against Bharti stemming from the statements that appeared in the Journal, on the CBS Early Show, and those statements Bharti reposted on his website. Momah alleged actual damages in the form of lost wages, impairment of earning capacity, damages to his reputation and good will, pain and suffering, physical illness, medical bills and legal expenses. Bharti filed a motion for summary judgment claiming his statements were privileged and lacked the requisite fault. The court granted the motion. Momah now appeals.

Discussion
¶ 6 When reviewing a summary judgment order, the appellate court undertakes the same inquiry as the trial court. Thompson v. Peninsula School District, 77 Wash.App. 500, 504, 892 P.2d 760 (1995). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Civil Rule (CR) 56(c). The moving party bears this burden of proof. LaPlante v. State, 85 Wash.2d 154, 158, 531 P.2d 299 (1975). "A material fact is one upon which the outcome of the litigation depends." Barrie v. Hosts of Am., Inc., 94 Wash.2d 640, 642, 618 P.2d 96 (1980). The nonmoving party cannot rely on speculation but must assert specific facts to defeat summary judgment. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986). All facts and inferences are considered in the light most favorable to the nonmoving party. Ashcraft v. Wallingford, 17 Wash.App. 853, 565 P.2d 1224 (1977). Here, Bharti moved for summary judgment so Momah receives the benefit of all factual inferences.
¶ 7 In a defamation case, the plaintiff must establish four elements: falsity, an unprivileged communication, fault, and damages. Mohr v. Grant 153 Wash.2d 812, 822, 108 P.3d 768 (2005). Falsity and damages were not at issue for the purposes of summary judgment. We consider whether the trial court applied the proper standard of fault and correctly determined the offensive remarks were privileged.
I. Standard of Fault
¶ 8 At common law, a plaintiff claiming defamation could recover presumptive damages by proving a false publication subjecting the defamed individual to hatred, contempt or ridicule. Haueter v. Cowles Publishing Co., 61 Wash.App. 572, 578, 811 P.2d 231 (1991). This changed when the Supreme Court began "constitutionalizing" defamation law, overturning two centuries of libel law to ensure the uninhibited debate on public issues embodied in the First Amendment. Dun & Bradstreet Inc. v. Greenmoss Builders, *461 Inc., 472 U.S. 749, 765, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (J. White, concurring).
¶ 9 The first step in this movement toward protecting public debate came when the Court required public officials to prove actual malice  knowledge or reckless disregard for falsity  in order to prove defamation. New York Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Eventually, the Court determined that the trend toward promoting open debate endangered individual reputations, and a balance between these competing forces was required. To this end, in Gertz v. Robert Welch Inc., 418 U.S. 323, 346, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court determined that states could allow private individuals to bring defamation claims based on negligence, rather than actual malice.
¶ 10 The Washington State Supreme Court followed the precedent set by Gertz, when it faced an appeal that "raise[d] the question of whether `actual malice' needs to be established when the statement was directed at a private person, yet pertains to an issue of public concern." Taskett v. KING Broad. Co., 86 Wash.2d 439, 440, 546 P.2d 81 (1976).
"[A] private individual, who is neither a public figure nor official, may recover actual damages for a defamatory falsehood, concerning a subject of general or public interest . . . on a showing that in publishing the statement, the defendant knew or, in the exercise of reasonable care, should have known that the statement was false, or would create a false impression in some material respect."
Id. at 445, 546 P.2d 81. In the wake of "constitutionalization," the requisite standard of fault varies based on the nature of the plaintiff,[2] the nature of the issue,[3] the nature of the damages,[4] and the existence of privilege.[5]
¶ 11 Here, Momah is a private figure, not a public official or public figure.[6] *462 The issue is one of public concern and only actual damages are sought. Therefore, unless a privilege applies, Momah need only meet the negligence standard of fault.
¶ 12 When the standard of fault is negligence, the applicable burden of proof is preponderance of the evidence. Haueter v. Cowles Publishing Co., 61 Wash.App. 572, 582, 811 P.2d 231 (1991). Once the plaintiff has established a prima facie case of defamation, the defendant can raise either an absolute or qualified privilege to defend against liability for defamatory statements. See Bender v. Seattle, 99 Wash.2d 582, 600, 664 P.2d 492 (1983); Alpine, 114 Wash.App. at 381-82, 57 P.3d 1178. "An absolute privilege or immunity is said to absolve the defendant of all liability for defamatory statements . . . A qualified privilege, on the other hand, may be lost if it can be shown that the privilege has been abused." Bender, 99 Wash.2d at 600, 664 P.2d 492. If the court determines that a privilege applies, the burden of proof shifts to the plaintiff to demonstrate abuse of that privilege. Alpine, 114 Wash.App. at 382, 57 P.3d 1178. "[A] showing of actual malice will defeat a conditional or qualified privilege." Herron v. Tribune Pub. Co. Inc., 108 Wash.2d 162, 183, 736 P.2d 249 (1987). Actual malice must be shown by clear and convincing proof of knowledge or reckless disregard as to the falsity of a statement. Bender, 99 Wash.2d at 601, 664 P.2d 492. Thus, the showing that a privilege applies raises both the standard of fault and burden of proof, even where the plaintiff is a private individual. Id. at 601-02, 664 P.2d 492.
¶ 13 The burden of proof is the same at both summary judgment and trial.[7] On summary judgment, Momah need only prove negligence by a preponderance of the evidence unless a privilege applies to Bharti's conduct.
II. Privilege
¶ 14 Relying on Alpine, the trial court found that Bharti was protected by a qualified privilege for statements made against a private person about a public interest as articulated in Alpine. Therefore, to survive summary judgment, the court required Momah to prove Bharti's abuse of that privilege by clear and convincing evidence of malice. Momah contends that the trial court misinterprets Alpine, and therefore, erred in applying the privilege.
¶ 15 The trial court also determined that two other privileges, asserted by Bharti, did not apply  those protecting reports of an official proceeding and communications in interest of the speaker, recipient, or third party. Bharti asserts the public interest privilege was properly applied. In the alternative, he asks that this court affirm based on either of the other alleged privileges despite the trial court's conclusion that neither applied.
A. Privilege For a Matter of Public Concern
¶ 16 The trial court extracted a qualified privilege "for communications of matters of public concern" from Alpine. It explained,

Alpine Industries v. Cowles Publishing Co., 114 Wash.App. 371, 57 P.3d 1178 (2002) recognizes a qualified privilege when the publication involves a private person, but concerns a matter of public interest or concern. . . . there can be little question but that the issue whether or not there is a physician or are physicians who are abusing their patients in the ways alleged by the plaintiffs in the underlying lawsuits is a question of public concern.
This misinterprets Alpine, which neither created nor recognized a privilege for matters of public concern.
*463 ¶ 17 In Alpine, a corporation filed a defamation suit against a newspaper for portions of a story about a federal judgment entered against the corporation for selling counterfeit software. 114 Wash.App. at 374, 57 P.3d 1178. The plaintiff was a private figure and the issue was of public concern. In its analysis, the court properly applied the fair reporting privilege because the newspaper was reporting on the official court proceedings. Id. at 385-86, 57 P.3d 1178. "A newspaper has a qualified or conditional privilege to report legal proceedings provided the publication is a fair and accurate statement of the contents and is made without malice." O'Brien v. Tribune Pub. Co., 7 Wash.App. 107, 117, 499 P.2d 24 (1972). As the newspaper report was a substantially accurate and fair portrayal of the outcome of an official proceeding, the privilege precluded liability. Alpine 114 Wash.App. at 387, 57 P.3d 1178. Alpine affirmed the ruling of the trial. Its analysis of the fair reporting privilege was dispositive and correct.
¶ 18 The Alpine opinion continued with an additional analysis under the heading "C. Fault and Burden of Proof." Alpine reiterated the well established rules that a private figure plaintiff must show negligence by a preponderance of evidence, and that the existence of a privilege necessitates proof of abuse of privilege through clear and convincing evidence of actual malice. Id. at 388, 57 P.3d 1178. The Alpine court noted that Washington had not yet articulated a standard of fault for disputes involving a private figure and issues of public concern. Id. at 392, 57 P.3d 1178. Then the court announced a new rule: "[A]n actual malice standard of fault should apply where a private figure plaintiff is allegedly defamed by a statement pertaining to a matter of public concern." Id. at 393, 57 P.3d 1178. The court believed this "preserves the constitutionally-based distinction between matters of public and private concern in private figure defamation cases." Id. Undoubtedly, the trial court in this case relied upon this section when it found a privilege existed.
¶ 19 The proper application of the standard articulated in Alpine becomes clear at the end of the opinion where the court observes: "Assuming for discussion one or more of the challenged statements were too inaccurate for purposes of the fair reporting privilege and viewing the record in a light most favorable to Alpine, not even a scintilla of evidence indicates Mr. Sowa or Cowles had knowledge of any alleged falsity or that they were reckless." Id. at 394, 57 P.3d 1178. Here, it becomes clear that in Section C, the court was analyzing whether Cowles had abused the fair reporting privilege, and thereby forfeited the protection of the privilege. The key sentence must be read in context to include a predicate clause: when it is alleged that the fair reporting privilege invoked in the case has been abused "[w]e have not articulated a definitive standard of fault for private figure  public concern defamation cases."
¶ 20 Moreover, the Alpine court did not claim to create a new privilege and it could not have done so. The Alpine decision, itself, correctly describes and cites the applicable Washington standard of negligence for private plaintiffs.
"[A] private individual who is neither a public figure nor official, may recover actual damages for a defamatory falsehood, concerning a subject of general or public interest, where the substance makes substantial dangers to reputation apparent, on a showing that in publishing the statement, the defendant knew or, in the exercise of reasonable care, should have known that the statement was false, or would create a false impression in some material respect."
Id. at 389, 57 P.3d 1178 (quoting Mark v. Seattle Times, 96 Wash.2d 473, 483, 635 P.2d 1081 (1981) (quoting Taskett, 86 Wash.2d at 445, 546 P.2d 81)). Indeed, as discussed above, both federal and Washington case law have established negligence as the standard for private plaintiffs. The Court of Appeals could not overrule this binding precedent. Yet, the privilege recognized by the trial court would effectively overrule this standard by making statements privileged every time a matter of public concern was involved and raising the standard of fault to actual malice.
¶ 21 The trial court erroneously relied on the language in Alpine as a basis for a qualified privilege for communications on *464 matters of public concern. No such privilege exists. Since federal and state law do not support a privilege for communication on matters of public interest, Bharti can only receive the protection of the actual malice standard if some other privilege applies to his statements. Otherwise, as a private individual, Momah need only prove negligence by a preponderance of evidence both at summary judgment and at trial.
B. Fair Reporting Privilege
¶ 22 Bharti also asserts that the fair reporting privilege applies. Washington recognizes a conditional privilege for publication of defamatory matter that originates in a report of an official action, proceeding or meeting open to the public that deals with a matter of public concern. Mark, 96 Wash.2d at 487, 635 P.2d 1081. For protection under the privilege, the publication must be accurate and complete or a fair abridgment of the reported occurrence. Id. "[W]hen applying the fair reporting privilege, we must first determine whether the offensive statements are attributable to an official proceeding." Alpine, 114 Wash.App. at 385, 57 P.3d 1178. Bharti claims the privilege applies because his statements were accurate reports or fair abridgments of the allegations contained within the complaints he filed on behalf of Momah's alleged victims. We disagree.
¶ 23 The privilege extends to defendants who report on official actions and proceedings. Alpine, 114 Wash.App. at 383, 57 P.3d 1178. "A newspaper has a qualified or conditional privilege to report legal proceedings provided the publication is a fair and accurate statement of the contents and is made without malice." O'Brien v. Tribune Pub. Co., 7 Wash.App. 107, 117, 499 P.2d 24 (1972). Bharti did not report on legal proceedings. Instead, he is an attorney who instigated the proceedings and publicized the statements prior to the official proceedings. The timeline of events does not support application of the fair reporting privilege.
¶ 24 On September 19, 2003, the King County Journal published its first article attributing to Bharti that accusations of sexual impropriety had been made against Momah and that he was under investigation. That article stated that Bharti made his comments the day before. On September 19, Bharti filed a complaint but he did not name Momah as a defendant. Bharti filed the first suit naming Momah as a defendant on September 24 at 3:54 p.m., six days after his initial statement to the Journal and five days after publication of the article. The Journal published the second article containing allegations against Momah on September 24 and included comments made by Bharti on the previous day. This article stated that Bharti had added Momah to the complaint, which alleged that the brothers took turns sexually assaulting patients.
¶ 25 The fair reporting privilege cannot apply to the statements since an official proceeding did not yet exist. Furthermore, the statements made on the CBS Early Show on September 30 did not have a foundation in an official proceeding. In response to a question about the district attorney filing charges, Bharti responded, "Dennis Momah is a defendant." When Bharti made this comment no criminal charges had been filed against Momah. None of the allegedly defamatory statements relate to an existing official proceeding so they cannot support the fair reporting privilege. The trial court correctly concluded that this privilege does not apply.
C. Common Interest Privileges
¶ 26 Bharti also asserts his statements were privileged because they were "good faith statements in the interests of the publisher, the recipient, or persons sharing a common interest." The trial court determined that the publication of the statements made in this case exceeded the scope of publication afforded a qualified privilege as recognized under existing case law. The trial court did not err in its conclusion.
¶ 27 Washington recognizes a qualified privilege for the protection of common interests where:
the publication is for the protection of the interest of the publisher; the recipient or a third person; persons sharing a common interest; family relationships; public interest. In connection with the last mentioned *465 type of privilege the publication is privileged only when made to a public officer or a private citizen who is authorized to act. The privilege does not extend to a publication to the entire public.
Owens v. Scott Pub. Co., 46 Wash.2d 666, 674, 284 P.2d 296 (1955) (internal citations omitted); See also Twelker v. Shannon & Wilson, Inc., 88 Wash.2d 473, 478, 564 P.2d 1131 (1977). "The common interest privilege applies when the declarant and the recipient have a common interest in the subject matter of the communication." Moe v. Wise, 97 Wash.App. 950, 957-58, 989 P.2d 1148 (1999). This privilege generally applies to organizations, partnerships and associations and "arises when parties need to speak freely and openly about subjects of common organizational or pecuniary interest." Id. at 958-59, 989 P.2d 1148. The court has applied this privilege in cases of limited publication on issues in common between the publisher and recipients. See e.g. Gem Trading Co., Inc. v. Cudahy Corp., 92 Wash.2d 956, 958-59, 603 P.2d 828 (1979) (former employee brought defamation action against employer who told vendors that orders placed by the employee were unauthorized); Moe, 97 Wash.App. at 954, 989 P.2d 1148 (CEO of a company in Chapter 11 bankruptcy sent a letter to creditors attributing the filing to plaintiff's actions); Ward v. Painters' Local Union, 41 Wash.2d 859, 866, 252 P.2d 253 (1953) (privilege extended to union members who made written and oral statements that a member had misappropriated funds while an officer of the union).
¶ 28 Based on previous application of the common interest privilege, the trial court properly found that Bharti is not protected. Bharti did not have an organizational or business relationship with the recipients of his communication. His publications were made to the general public, rather than the specific group sharing the common interest. His actions far exceeded the scope of the privilege.
¶ 29 None of the privileges apply to Bharti's comments to the Journal and or made on the CBS Early Show. Since Bharti is not protected by a privilege, Momah does not need to show abuse of the privilege by clear and convincing evidence. Momah is a private individual and therefore subject to the negligence standard of fault and the preponderance of evidence burden of proof. Because the trial court erroneously applied the privilege and the higher burden of proof, we vacate the summary judgment.
III. Evidentiary Issues
¶ 30 Bharti filed a motion to exclude as hearsay several exhibits submitted with Momah's opposition to summary judgment. The trial court granted the motion to exclude many of these documents without explanation. Momah contests the exclusion of this evidence. Ordinarily, evidentiary rulings are reviewed for abuse of discretion. However, "[t]he de novo standard of review is used by an appellate court when reviewing all trial court rulings made in conjunction with a summary judgment motion." Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998). As a result, the trial court's decision to exclude the information from Bharti's website and police and investigator reports are subject to de novo review.
A. Internet Print-outs
¶ 31 The trial court excluded proffered print-outs of biographical information, comments from clients, information about Bharti's class action suit against Boeing, and media reports about Bharti's cases, including the suits against the Momah brothers. Bharti does not dispute the authenticity of the print-outs from his law firm's website, but contends that the exhibits are hearsay. The court provided no reasons for exclusion of the information printed directly from Bharti's website, but we assume the court agreed the documents are hearsay. In his briefing, Bharti provides no legal citations to support his defense of the trial court's exclusion of the evidence. He merely states that the evidence is hearsay and irrelevant and that Momah was not prejudiced by exclusion of the evidence.[8]
*466 ¶ 32 The print-outs of the Journal articles maintained on the website are not hearsay. Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." ER 801(c). Momah did not offer the print-outs of the Journal articles maintained on Bharti's website as proof of their truth or falsity. He offered them to show that the statements were published on the website. Since the articles were offered for the purpose of showing republication and not to prove the truth of the contents, the print-outs of the Journal articles are not excludable as hearsay.
¶ 33 Furthermore, Momah argues persuasively that the print-outs of the information from Bharti's website, if offered for their content, are not hearsay. Under evidence rule (ER) 801(d)(2), an admission by a party-opponent is not hearsay. Statements considered admissions include the party's own statement or "a statement of which the party has manifested an adoption or belief in its truth." ER 801(d)(2)(i), (ii). By posting on his website, Bharti has taken affirmative steps to provide the information to inform the public about himself and his legal practice. He would not use this information to represent himself if he did not expect the public to believe its truthfulness. Bharti does not dispute that the website belongs to him or contend that he does not control the content of the website. By providing the content as a means of publicizing himself, Bharti effectively manifests his belief in the truth of the information. Even if the biographical information, newspaper articles, and client comments contain hearsay, Bharti has manifested his belief in the truth of those statements. They are not hearsay under ER 801(d)(2).
¶ 34 Although the statements are not hearsay, they must still be relevant in order to be admissible. Bharti alleges the website information is irrelevant because it is merely biographical or information about other cases. Momah claims, "the entire website provides vivid, non-hearsay evidence of Mr. Bharti's motive of self promotion and his reckless disregard of the truth in service of that cause." Although as a private individual, Momah need only prove negligence, if the trial court recognized Bharti's assertion of privilege, Momah would need to establish abuse of privilege to survive summary judgment. Abuse of privilege requires clear and convincing evidence of actual malice. Since Momah would then need to show Bharti's malice in making the statements, proof of a motive for making false statements would have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. As a result, the website information may tend to show a motive for self-promotion and may be relevant to malice. The trial court erred in excluding the evidence.
¶ 35 Further, the statements about Momah posted on the website are themselves a publication for which Momah is entitled to assert a claim for defamation. See IV. Republication, below.
B. Police and Medical Reports
¶ 36 During discovery, Bharti provided copies of several investigative and police reports. These reports involve the investigations into Charles by the police and MedQAC investigators. They provide exculpatory evidence for Momah because the employees interviewed stated that he had never impersonated Charles. Bharti contends that the reports fail to support Momah's theory that Bharti had notice of Momah's innocence because they do not show when Bharti learned of the statements or received the copies. That this evidence was in Bharti's possession, and produced by him in discovery, shows he had reason to know that his statements to the press were false. The documents are relevant. Therefore, if they are otherwise admissible, the court's exclusion was improper.
¶ 37 Below, Bharti contends that the police and medical investigation records are hearsay or hearsay within hearsay. Momah argues for admission under ER 803(a)(3) because he did not offer the documents to show the truth of the statements. Rather, Momah *467 contends the record shows that Bharti knew that the witnesses he relies upon to provide the foundation for his statements had not made the alleged accusations. Alternatively, Momah argues for admission of the reports as circumstantial evidence of the minds of Bharti's sources. These documents do stem from statements made to the police and medical investigators contemporaneous with Bharti's public comments to the media. Since Bharti produced these documents during discovery for this case, he clearly received the information at some point, but the record before us does not show conclusively when this discovery took place, or that they came into Bharti's possession before the defamatory statements. Without this key information, the investigative reports are not relevant to prove either Bharti's or his witnesses' states of mind. The trial court properly excluded exhibits 37, 39, 40, 43, and 47.
IV. Republication
¶ 38 The internet print-outs serve as evidence for Momah's claim that Bharti engaged in additional acts of libel through posting the articles on his website. The Washington Supreme Court adopted and applied the single publication rule of Restatement (Second) of Torts § 577A in Herron v. KING Broadcasting Co., 109 Wash.2d 514, 521, 746 P.2d 295 (1987). The rule "states that any one edition of a book or newspaper, or any one radio or television broadcast, is a single publication." Id. (citing Restatement § 577A(3)). Washington has adopted this rule but has not yet explored the application of the rule to the internet. Momah contends that Herron supports the interpretation that the postings of the Journal articles on Bharti's website constitute acts of defamation separate and distinct from the original statements to the newspaper. Bharti and the amicus curiae urge the court to apply the single publication rule to the posting of the articles on his website.
¶ 39 In Herron, an allegedly defamatory statement originally aired during the 5:30 p.m. newscast. 109 Wash.2d at 518-19, 746 P.2d 295. A different broadcaster then revised and read the revised report on the 11 p.m. news the same evening. Id. The two reports contained similar contents but the 11 p.m. story included additional statements. Id. The court determined that "[t]he 11 p.m. newscast was the result of a conscious independent act, using a new script and broadcaster, and so clearly constitutes a separate publication, even under the single publication rule." Id. at 521, 746 P.2d 295. This comports with the Restatement discussion of the single publication rule. "[I]f the same defamatory statement is published in the morning and evening editions of a newspaper, each edition is a separate single publication and there are two causes of action . . . In these cases the publication reaches a new group and the repetition justifies a new cause of action." Restatement § 577A cmt. d.
¶ 40 Based on this theory, if the Journal had published the same article mentioning Momah on two separate days, he could bring two causes of action since the two editions represent separate publications. Similarly, if Bharti made the same statement on two different occasions, Momah would have two causes of action. "It is the general rule that each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises." Restatement § 577A cmt. a.
¶ 41 In this case, Bharti has essentially made the same statement two different times  once when he spoke to the Journal and once when he posted the article quoting those remarks on his website. Bharti acted on two occasions. His efforts were aimed at different audiences  those that read the Journal and those that visit his website. The fact that the article was published previously by the Journal makes no difference. Bharti made a separate communication to a new audience when he posted to his website. This scenario does not differ from a newspaper publishing the same article on different days or a newscast reading the same copy at 5:30 p.m. and 11 p.m. Bharti republished his previous statements in a different form. The two statements represent separate and distinct publications. Bharti may be liable for both as separate causes of action.
*468 ¶ 42 To apply the single publication rule in this context, as Bharti advocates, would allow an alleged defamer the opportunity to republish his libelous statements at will on a multitude of websites on the internet without fear of added liability. We decline to do so. As long as the publications meet the elements of defamation at the time of its posting on the website, the republication of the articles on the website is a separately actionable statement of defamation.
¶ 43 The case law from other jurisdictions cited by both Bharti and the amicus curiae do not persuade us that other jurisdictions would interpret Bharti's communications here as a single publication. In these cases, the courts were asked to determine whether causes of action arise continuously as a result of a website posting for the purposes of the statute of limitations. See Firth v. New York, 98 N.Y.2d 365, 747 N.Y.S.2d 69, 775 N.E.2d 463 (2002); Oja v. United States Army Corps of Eng'rs, 440 F.3d 1122 (9th Cir.2006); Churchill v. New Jersey, 876 A.2d 311, 378 N.J.Super. 471 (2005); Traditional Cat Association, Inc. v. Gilbreath, 118 Cal. App.4th 392, 13 Cal.Rptr.3d 353 (2004); Van Buskirk v. New York Times Co., 325 F.3d 87 (2nd Cir.2003). The courts applied the rule in this context to mitigate endless triggering of the statute of limitations, multiplicity of suits, and harassment of defendants that would arise because of the number of viewers and indefinite lifespan of a website. Firth, 98 N.Y.2d at 370, 747 N.Y.S.2d 69, 775 N.E.2d 463. We have not been asked to resolve any questions regarding the statute of limitations and decline to raise the issue sua sponte. Since this case does not present a statute of limitation issue, the cited case law is inapposite. Bharti's reposting of the Journal articles relating his statements about Momah are distinct acts, pursuable as separate causes of action.
V. Motion for Continuance to Complete Discovery
¶ 44 In addition to his opposition for summary judgment, Momah argued in the alternative for continuation of the motion in order to complete discovery under CR 56(f). Momah claims that key witness depositions had not been taken or completed because of unavailability of documents, privilege objections and witness' schedules. Additionally, Momah believes that important documents had not been produced because the court had not ruled on Bharti's objections to the discovery of privileged information. By granting the summary judgment, the trial court implicitly denied the continuance. Momah challenges this decision.
CR 56(f) allows a party to request a continuance to continue discovery.
Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
Denial of a motion for continuance will be upheld absent a showing of manifest abuse of discretion. Turner v. Kohler, 54 Wash.App. 688, 693, 775 P.2d 474 (1989) (citing, Lewis v. Bell, 45 Wash.App. 192, 196, 724 P.2d 425 (1986)). The trial court can deny a continuance under CR 56(f) if "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact." Turner, 54 Wash.App. at 693, 775 P.2d 474 (citing, Lewis, 45 Wash.App. at 196, 724 P.2d 425; Sternoff Metals Corp. v. Vertecs Corp., 39 Wash.App. 333, 341-42, 693 P.2d 175 (1984)). Only one of the qualifying grounds is needed for denial. Pelton v. Tri-State Mem'l Hosp., 66 Wash.App. 350, 356, 831 P.2d 1147 (1992).
¶ 45 Momah provided adequate reasons for delay  including pending court rulings on privileged documents. But, he does not explain the nature of the evidence that he believed would be established through additional discovery. Since only one ground is needed for denial of the CR 56(f) motion, the trial court did not abuse its discretion by denying the continuance.
*469 VI. Motion To Vacate for Fraud
¶ 46 Several months after the trial court granted summary judgment for Bharti, Momah brought a motion to vacate the judgment under CR 60(b)(4) and CR 60(b)(11). Momah argued fraud on the party and on the court, and misrepresentation and misconduct by the adverse party. These allegations stem from the findings of fact and judgment of a Pierce County trial court in a suit brought against Momah by Albert and Perla Saldivar, two of Bharti's clients. The trial court determined that the Saldivars' claims were false and that Bharti "was materially involved in the fabrication of this false, sworn testimony." The court found multiple CR 11 violations, which included preparing and signing false declarations as well as filing the original and amended complaints without a reasonable belief that they were well grounded in fact and without conducting a reasonable investigation. Momah contends that these falsities improperly influenced the court to grant summary judgment for Bharti, since Bharti relied upon evidence from the Saldivars to support his motion. Momah claims the trial court should be bound by the ruling of the Pierce County trial court because of collateral estoppel.
¶ 47 The trial court denied the motion to vacate because collateral estoppel does not apply: "All of the cases applying the doctrine of collateral estoppel cited by the parties do so in the context of cases litigated after the initial factual determination, not the other way around." Additionally, "the issues in the Pierce County action and this action are not identical." A motion to vacate a judgment under CR 60(b) is at the sound discretion of the trial court. United Pac. Ins. Co. v. Disc. Co., 15 Wash.App. 559, 562, 550 P.2d 699 (1976). As a result, the trial court's decision is reviewed for abuse of discretion. Lane v. Brown & Haley, 81 Wash.App. 102, 105, 912 P.2d 1040 (1996) (citing Pybas v. Paolino, 73 Wash. App. 393, 399, 869 P.2d 427 (1994)). A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). Under CR 60(b)(4) "the fraudulent conduct or misrepresentation must cause the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." Lindgren v. Lindgren, 58 Wash.App. 588, 596, 794 P.2d 526 (1990). The fraud or misrepresentation must be established by clear and convincing evidence. Id.
¶ 48 If collateral estoppel applies, then the trial court was bound by the determination that Bharti and the Saldivars fabricated claims. Since the Saldivars submitted declarations about these claims in support of the summary judgment motion, the trial court would have abused its discretion by failing to vacate the judgment in the face of evidence of fraud in the proceedings. "Collateral estoppel, or issue preclusion, bars relitigation of an issue in a subsequent proceeding involving the same parties." Christensen v. Grant County Hosp., 152 Wash.2d 299, 96 P.3d 957 (2004). This preclusion occurs even with assertion of a different claim or cause of action. Id. The application of collateral estoppel requires
the party seeking application of the doctrine must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.
Id. at 307, 96 P.3d 957. As shown by the first of these criteria, timing is critical. The issue must have been decided in an earlier proceeding for application in a later proceeding. The Pierce County case  being later in time  cannot have binding effect on the summary judgment. Therefore, collateral estoppel does not apply in this case. The trial court did not err by denying the motion to vacate.
¶ 49 The trial court did not err in its denial of both the motion for continuance to complete discovery and motion to vacate. Furthermore, the trial court properly excluded from evidence the police and *470 MedQAC reports. But, the trial court erroneously excluded the print-outs from the website. Finally, because the trial court erroneously applied a privilege to Bharti's statements, and required Momah to prove actual malice by clear and convincing evidence, we vacate the summary judgment order and remand for further proceedings.
WE CONCUR: COX and GROSSE, JJ.
NOTES
[1] Because the twin brothers share the same last name, we will refer to Charles Momah by first name, and Dennis Momah by last name. No disrespect is intended.
[2] "The degree of fault necessary to make out a prima facie case of defamation depends on whether the plaintiff is a private individual or a public figure or public official." Bender v. Seattle, 99 Wash.2d 582, 599, 664 P.2d 492 (1983)
[3] "[W]here no matters of public concern are involved, presumed damages to a private plaintiff for defamation without proof of actual malice may be available." Maison de France v. Mais Oui!, 126 Wash.App. 34, 54, 108 P.3d 787 (2005); See also Dun & Bradstreet, 472 U.S. at 763, 105 S.Ct. 2939.
[4] Gertz limits recovery under a negligence showing to actual damages. Gertz, 418 U.S. at 349-50, 94 S.Ct. 2997. A plaintiff who seeks presumed or punitive damages must prove knowledge of falsity or reckless disregard for the truth  the actual malice standard. Id. at 349, 94 S.Ct. 2997. Washington prohibited the award of punitive damages but adopted these standards of fault for presumed and actual damages. Taskett, 86 Wash.2d at 447, 546 P.2d 81. "[J]uries shall be limited to awarding damages for only actual injuries sustained, and shall not be allowed to presume the existence of any damages in the absence of a finding that the statement was published with knowledge that it was false or with a reckless disregard for the truth." Id.
[5] Proof of an abuse of privilege requires clear and convincing evidence of knowledge or reckless disregard as to the falsity of the statement. Bender, 99 Wash.2d at 601, 664 P.2d 492.
[6] A public figure is one who willingly enters the public sphere either by occupying positions of persuasive power and influence or by thrusting themselves to the forefront of a particular controversy. Time Inc. v. Firestone, 424 U.S. 448, 453, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) (citing Gertz, 418 U.S. at 345, 94 S.Ct. 2997). A person does not become a public figure merely by engaging in litigation. "There appears little reason why these individuals should substantially forfeit that degree of protection which the law of defamation would otherwise afford them simply by virtue of their being drawn into a courtroom." Time, Inc., 424 U.S. at 457, 96 S.Ct. 958. Furthermore, the Supreme Court rejected the idea that "any person who engages in criminal conduct automatically becomes a public figure for purposes of comment on a limited range of issues relating to his conviction." Wolston v. Reader's Digest Association, Inc., 443 U.S. 157, 168, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979). Indeed, "[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." Id. at 167, 99 S.Ct. 2701. A defendant cannot merely attract public attention in order to elevate a plaintiff to public figure status as a means avoiding a defamation suit. "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." Hutchinson v. Proxmire, 443 U.S. 111, 135, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). Individuals become public figures based on their own, voluntary actions. Rarely, a plaintiff may become an involuntary public figure. "Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare." Gertz, 418 U.S. at 345, 94 S.Ct. 2997.
[7] "[I]n light of Anderson [v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)] which holds the standard on a summary judgment motion is the same as would be applicable at trial, our Supreme Court would interpret article 1, section 5 of the Washington State Constitution the same way." Haueter v. Cowles Pub. Co., 61 Wash.App. 572, 584, 811 P.2d 231 (1991).
[8] Momah notes that this lack of legal citation should be fatal to Bharti's defense of the exclusion of the evidence since "[a]rguments not supported by relevant citation of authority need not be considered by this court." State v. Hoffman, 116 Wash.2d 51, 71, 804 P.2d 577 (1991).