IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DEIRTRA WILLIAMS,
as personal representative of the
ESTATE OF DEIDRA L. CLARK;
A.M.C., a minor child;
DEIRTRA CLARK, a single person;
NORMAN DEVOE, a single person;
R.E.A., a minor child,

                Appellants,

v.

KING COUNTY,
a municipal corporation;
CANDLEWOOD RIDGE
HOMEOWNER'S ASSOCIATION
(d/b/a CANDLEWOOD
RIDGE/CARRIAGE WOOD
HOMEOWNER'S ASSOCIATION),
a Washington nonprofit corporation;
CANBER CORPORATION,
a Washington corporation,
ISSAQUAH TREE CARE LLC, a
Washington corporation,

                Respondents.

No. 81075-8-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Appellants sued King County for various forms of

negligence after a tree fell across a road onto a passing car killing the driver and

injuring a passenger. Appellants challenge the trial court striking a portion of

their expert's report, striking a Google image of the tree, and granting of

summary judgment to the County. Finding no error, we affirm.

    Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

On November 13, 2017, Deidra Clark was driving along SE 179th Street near the Candlewood Ridge development in unincorporated King County, Washington (County). Deidra's twin sister, Deirtra Clark, was in the front passenger seat; Deidra's daughter, four-year-old A.M.C., was in the back seat.[1] According to the County, the National Weather Service had a high wind warning in effect for that date, and the area was likely experiencing gale force winds with gusts of up to 35 to 45 miles per hour.

As the car neared the intersection of SE 179th Street and 159th Avenue SE, a black cottonwood tree (subject tree) fell on the car. Deidra was killed and Deirtra was injured. A.M.C. was not injured. Norman DeVoe was Deidra's fiancé and A.M.C.'s father. He arrived at the scene of the accident within minutes, saw his deceased fiancée, and looked for his daughter before realizing that she had already been removed from the car.

Deirtra Williams (mother of Deidra and Deirtra Clark) as personal representative of Deidra's estate, A.M.C., Deirtra Clark, and Norman DeVoe sued King County, the Candlewood Ridge Homeowner's Association (HOA), and Canber Corporation (the HOA's landscaping contractor). For clarity, we refer to the plaintiffs collectively as Williams. The complaint raised three causes of action: negligence; negligent hiring, training, retention and/or supervision; and negligent infliction of emotional distress. Williams subsequently amended their

---

[1] We use first names for clarity when family members share the same last name.

2

complaint several times, including adding defendant Issaquah Tree Care (contracted by the HOA to inspect and maintain trees on HOA property).[2] As litigation unfolded, the following facts and opinions were made part of the record.

The black cottonwood tree that fell was located on private property owned by the Candlewood Ridge Homeowner's Association. After the accident, King County Road Services Division vegetation specialist James Kotarski inspected the remaining stem, or trunk, of the subject tree from the County right-of-way. He said the stem was partially covered in English ivy and he saw a fungal "conk", or fruiting body, on the southwest side of the stem. Such conks usually indicate decay that structurally weaken the trunk of a tree.

An expert arborist for Williams, Galen Wright, inspected the remaining stem of the tree from the HOA's private property. He noted the English ivy partially covering the stem, three conks of stem decay fungi, some decay in one "lateral anchor root," and some bark separation just above the "root collar." According to Wright, the black cottonwood tree species is prone to branch, stem, and root failures even in non-storm conditions. Both Kotarski and Wright agreed that the subject tree leaned over the road.

The County Road Services Division maintains a "Road Helpline" that allow citizens, County employees, and partner agencies to call and report concerns about county roadways, including "trees of concern," defined as standing trees on or near a county roadway that may pose a hazard. Prior to the accident, the

---

[2] According to the record before us, all defendants besides the County have now settled with Williams; in any event, the County is the only defendant involved with this appeal.

3

County did not receive any reports about the subject tree.

In the 13 months prior to the accident, the County was aware of other trees that fell in the general vicinity. On January 20, 2017, another cottonwood tree on the same parcel of private property fell, which was located approximately 30-40 feet from the subject tree. In October 2016 and February 2017, two trees located about 0.6 miles away from the subject tree fell onto SE Petrovitsky Road. On November 8, 2017, two or three cottonwood trees[3] fell onto the County right-of-way at the intersection of SE Petrovitsky Road and 151st Avenue SE.

Defendant Candlewood Ridge Homeowner's Association moved to dismiss the claims of negligent infliction of emotional distress brought by DeVoe and A.M.C pursuant to CR 12(b)(6). The County joined the motion. The superior court dismissed DeVoe's claims for negligent infliction of emotional distress but not A.M.C.'s claims for the same.

The County moved for summary judgment. The County argued that its duty to maintain roads that are reasonably safe for ordinary travel did not extend to hidden dangerous conditions, which it did not create or have notice of, including decay in a tree located on private property. The County further argued that it did not have a legal duty to inspect all trees located near county roads in the absence of a complaint or other notice of concern about a particular tree. Last, the County argued that it enjoyed discretionary immunity.

Williams filed a written opposition to the County's motion for summary

---

[3] The record contains conflicting claims as to whether there were two or three trees that fell on this date. Either way, our analysis remains the same.

judgment and submitted a written report from Wright, a certified arborist and forester, and portions of his deposition testimony.

The County moved to strike (1) portions of Wright's opinions on the basis that they are speculative; and (2) a Google image of subject tree submitted by Williams in their opposition brief.

King County Superior Court held a hearing on the County's motion for summary judgment. At the conclusion of the hearing, the court granted summary judgment to the County ruling that the County did not have actual or constructive notice. The court struck the portions of Wright's opinion and the Google image that the County had objected to.

Williams appeals the order granting King County's motion for summary judgment and the earlier superior court order dismissing DeVoe's claims of negligent infliction of emotional distress.

DISCUSSION

Legal Standards

Municipalities are generally held to the same negligence standards as private parties. Helmbreck v. McPhee, 15 Wn. App. 2d 41, 50, 476 P.3d 589 (2020). Thus, to bring a negligence claim against King County, Williams must be able to prove duty, breach, causation, and injury. Id. The existence and scope of a duty are questions of law. Wuthrich v. King County, 185 Wn.2d 19, 25, 366 P.2d 926 (2016).

We review summary judgments de novo. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). "Summary judgment is appropriate

5

when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " Id. (alteration in original) (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)); CR 56(c). We must construe all facts and inferences in favor of the nonmoving party. Scrivener v. Clark College, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

Motion to Strike

Appellants argue that the trial court erred by striking a portion of Wright's expert report and a photograph that they included in their brief to the trial court in opposition to summary judgment, which they described as a Google image of the subject tree taken six years before the accident.

We review these trial court evidentiary decisions de novo. See Momah v. Bharti, 144 Wn. App. 731, 182 P.3d 455 (2008) (on appeal from summary judgment, trial court rulings on the admissibility of evidence are reviewed de novo even though the same rulings might be reviewed only for abuse of discretion in an appeal following a trial).

*A. Wright's report*

As a preliminary matter, appellants contend that the superior court did not specify which of Wright's opinions should be stricken and that if the case proceeded to trial, it would be unclear which "portions" of Wright's opinions were

stricken. Appellants contend that this lack of clarity alone justifies reversal of the superior court's decision to strike. Id.

The superior court's ruling was not so vague as to merit reversal on that basis. The County's motion to strike identified the following portion of Wright's opinion that the County argued was too speculative: "This recent, nearby tree failure should have stimulated a review of other trees in the vicinity on the HOA property as well as by King County. If this had been done, likely the fungal conks would have been noticed triggering a more detailed assessment of the subject tree." In its oral ruling, the superior court said it was striking Wright's "opinion as to the speculative portions of his opinions. He indicated that if there had been an inspection, it is likely that the conks would have been noticed. That is all speculative and I will strike his testimony as well." The court's written order stated that the County's motion to strike was granted. The record is sufficiently clear that the superior court struck the portion of Wright's opinion that the County identified as too speculative and any deposition testimony that stated the same.

Next, appellants argue that Wright's opinion was not impermissibly speculative. An expert's opinion must be based on fact and cannot simply be a conclusion or based on an assumption if it is to survive summary judgment. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 301, 449 P.3d 640 (2019).

Wright was unable to cite any treatise or other authority stating that a tree falling in one area requires an examination of other trees in the area, nor did he opine on how far from any fallen tree such an inspection should cover. Wright did not know why the other trees in the general vicinity fell or whether they were

7

diseased. Wright viewed only the remaining stump of the tree that failed in January 2017; he did not examine the other fallen trees that are at issue here. Concluding that had the County examined these other trees, they would likely have noticed fungal conks was nothing more than speculation. The trial court did not err by striking the disputed portion of Wright's report and any corresponding testimony.

### B. The disputed Google image

Appellants argue that the trial court erred by striking the disputed Google image of the subject tree because their expert, Wright, based his opinion on it. Thus, they argue, the image was admissible under ER 703[4] as facts or data upon which Wright based his opinion.

However, the record is not clear that Wright actually based his opinion on the disputed Google image. Wright's report contains an image from Bing Maps Streetview, and in his deposition testimony he refers to the "Bing imagery," "imagery from Bing 2011," and "the photos we have, the imagery we have from Bing 2011…". The logical conclusion is that Wright was referring to the Bing image in his report, not the Google image. But because the Bing image was from 2014 and the Google image was from 2011, it is not altogether clear from his deposition testimony which image Wright relied upon. Appellants have not demonstrated conclusively that Wright relied on the disputed Google image to

---

[4] ER 703 states, "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

form his expert opinion.

Even if Wright relied on the Google image to form his opinions, as the appellants claim, that does not make the image substantively admissible evidence under ER 703. We rejected a similar argument last year in the case of Desranleau v. Hyland's, Inc., 10 Wn. App. 2d 837, 844–45, 450 P.3d 1203, (2019), review denied, 195 Wn. 2d 1004, 458 P.3d 783 (2020):

> Desranleau also incorrectly argues that because Dr. Pietruszka relied on Reid's statements when forming his opinion, those statements became admissible evidence under ER 703. ER 703 allows an expert witness to base their opinion on facts or data regardless of their admissibility, and ER 705 provides that an expert may be required to disclose the underlying facts or data on which their opinion is based, but neither provides that inadmissible statements become substantively admissible simply because an expert relied on them in forming their conclusions. See State v. Anderson, 44 Wn. App. 644, 652, 723 P.2d 464 (1986) (ER 705 is not "a mechanism for admitting otherwise inadmissible evidence as an explanation of the expert's opinion.").

Appellants further argue that the jury should decide the weight or credibility given to the image. But that ignores the requirement of authentication. Under ER 901, authentication is a "condition precedent to admissibility." To lay a proper foundation for photographs, "it is only required that some witness, not necessarily the photographer, be able to give some indication as to when, where, and under what circumstances the photograph was taken, and that the photograph accurately portrays the subject illustrated." State v. Newman, 4 Wn. App. 588, 593, 484 P.2d 473 (1971). Authentication would certainly be important in this case where the image appeared on its face to be distorted because even the light pole appeared to be leaning. Appellants failed to authenticate the

9

image. The trial court did not err by striking the disputed Google image offered by the appellants.

County's Duty: Notice and Foreseeability

Appellants argue that issues of material fact exist as to whether the County had actual or constructive notice of the "unsafe condition" — which they define as either the general fact that black cottonwoods lined the street or the specific danger that the subject tree would fall — or that such condition was foreseeable. For any one of these reasons, appellants argue, the County had a duty to take action to mitigate the danger.

Whether a duty exists is a question of law we review de novo. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

*A. Actual or Constructive Notice*

Government entities owe a duty to all persons to maintain their roadways in a condition that is reasonably safe for ordinary travel. Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002). But this duty is conditional, for it arises only when the government entity has notice of and time to correct the hazard in question. Helmbreck v. McPhee, 15 Wn. App. 2d 41, 50, 476 P.3d 589 (2020). As a result, the County must have (1) notice of a dangerous condition which it did not create, and (2) reasonable opportunity to correct it before liability arises for negligence. See id. Notice to King County may be actual or constructive. Id. Constructive notice may be inferred from the elapse of time a dangerous condition is permitted to continue. See id. "Constructive notice arises if the condition existed for a period of time so that the municipality should have

discovered its existence through the exercise of reasonable care." Ogier v. City of Bellevue, 12 Wn.App.2d 550, 555, 459 P.3d 368 (2020).

Three cases relating to the dangers of roadside vegetation are instructive: Albin v. National Bank of Commerce of Seattle, 60 Wn.2d 745, 375 P.2d 487 (1962), Wuthrich v. King County, 185 Wn.2d 19, 366 P.2d 926 (2016), and Helmbreck v. McPhee, 15 Wn. App. 2d 41, 476 P.3d 589 (2020).

In Albin, a tree fell and struck a car driving on a county road through a "heavily-wooded, mountainous area, during a windstorm of disputed force." 60 Wn.2d at 747. The road was used "somewhat extensively" during the deer and elk hunting season, though it was "remote and closed by snow during the winter." Id. A person in the car was killed and the administrator of his estate sued the county, among other parties. Id. The trial court dismissed the county from the lawsuit. Id. The Washington Supreme Court held the trial court did not err by dismissing the county because there was no evidence the county had actual or constructive notice that the tree posed a danger:

> There is no evidence that the county had actual notice that the tree which fell was any more dangerous than any one of the thousands of trees which line our mountain roads, and no circumstances from which constructive notice might be inferred. It can, of course, be foreseen that trees will fall across tree-lined roads; but short of cutting a swath through wooded areas, having a width on each side of the traveled portion of the road equivalent to the height of the tallest trees adjacent to the highway, we know of no way of safeguarding against the foreseeable danger…

Id. at 748-49.

In Wuthrich, a motorcyclist sued King County after he was hit by a car alleging that King County was liable for his injuries because overgrown

blackberry bushes obstructed the car driver's view of traffic at the intersection. 185 Wn.2d at 24-25. The trial court dismissed the action against the county on summary judgment. Id. The Washington Supreme Court disagreed, holding that there were genuine issues of material fact as to whether the county breached its duty. Id. The Washington Supreme Court explained the county's duty as follows: "We reaffirm that a municipality has a duty to take reasonable steps to remove or correct for hazardous conditions that make a roadway unsafe for ordinary travel and now explicitly hold this includes hazardous conditions created by roadside vegetation." Id. at 27.

Regarding breach of duty, the Washington Supreme Court stated, "Whether the County breached its duty depends on the answers to factual questions: Was the road reasonably safe for ordinary travel, and did the municipality fulfill its duty by making reasonable efforts to correct any hazardous conditions?" Id. at 27. The Washington Supreme Court stated that the plaintiff introduced sufficient evidence to create genuine issues of material facts as to both of these questions: The driver testified that her view of the intersection was obstructed by the blackberry bushes, and the plaintiffs' experts testified that the County could have taken a variety of corrective actions to address the issue. Id. at 27.

In Helmbreck, the plaintiff sued the city of Des Moines, among others, for negligence based on injuries he sustained in a car accident. 15 Wn. App. 2d at 46. The plaintiff claimed he could not see down the street due to a hedge blocking his view of the street and got into an accident due to the alleged lack of

visibility. Id. The hedge was located on private property. Id. at 46. The plaintiffs argued that the city of Des Moines had constructive notice that the vegetation made the intersection dangerous because the vegetation had existed for at least seven years. Id. at 54. Plaintiffs' expert testified that the hedge had been cut back about four or seven years before the accident, and at that time,, the intersection probably would have looked safe to City employees and most drivers; but, he opined, on the day of the accident the "overgrown vegetation" obstructed drivers' view of traffic conditions and created a dangerous condition. Id. at 54.

Despite the alleged length of time that the vegetation had existed and the testimony of the plaintiff's expert, Helmbreck held that the record lacked evidence that the City had constructive notice. Id. at 54. "As the trial court correctly noted, Helmbreck has provided no authority that the City had a legal duty to inspect the street and inform itself of dangerous conditions. No legal basis has been established for a presumption that the City should have known the vegetation was a dangerous condition." Id. at 54. Helmbreck distinguished Wuthrich because in Wuthrich there was evidence that the blackberry bushes at issue had been there for years and King County knew about them. Id. at 53.

Unlike the County's knowledge of the existence of the blackberry bushes that obstructed drivers' views in Wuthrich, in the instant case, there is no evidence that the County had actual notice of the dangers of the subject tree. The evidence the appellants point to in support of their argument that the County had actual notice — including previous tree falls in the vicinity of the subject tree

and the claim that black cottonwoods are generally susceptible to rot and failure — are not specific to the subject tree but instead relevant to the issues of constructive notice or foreseeability.

Turning to constructive notice, the appellants argue that an issue of material fact exists whether King County had constructive notice of the subject tree because (1) Wright stated that there were three conks of a stem decay fungi ("fungal conk") on the tree that would have been present on the tree between six and 12 years; (2) Wright opined that the crown of the tree and a portion of the stem of the tree were leaning over the road at least 15 to 20 degrees; (3) the tree was located in a "highly trafficked" residential neighborhood; (4) other trees had fallen in the vicinity of where the subject tree fell.

The appellants' constructive notice claims are most analogous to Helmbreck and Albin, where there was a lack of evidence that the local government entity had constructive notice and were dismissed from the lawsuits. Because we view the facts in the light most favorable to the appellants, we assume the subject tree, which still had leaves when it fell, leaned slightly toward the road; the subject tree was partially covered in ivy and had at least one fungal conk visible from the County right-of-way after viewing the stem intensely for a few minutes; and that other trees, some of which were black cottonwoods and some not, fell in the general vicinity of the subject tree.

Despite the fact that some of these conditions had allegedly existed for a number of years, as in Helmbreck, the conditions simply were not so obvious or dangerous as to put the County on constructive notice that the subject tree itself

posed a danger.  Appellants have not provided any evidence regarding why the other fallen trees in the vicinity fell or connecting their falls to the fall of the subject tree.  Appellants have not demonstrated that the lean of the subject tree was uncommon or particularly dangerous.  Kotarski, the County's vegetation specialist for the Road Services Division, stated in his declaration that it is "not uncommon for trees along roadways to lean toward the road, because trees seek sunlight and there is less competition for that over the roadway . . . Leaning trees are common along King County roadways and the fact that a tree leans toward the road does not make it a hazardous tree . . . "  Kotarski visually observed the "snag" (stem) of the tree after the accident and wrote, "I could tell that the snag was leaning slightly north, toward the county road.  The amount of lean I observed was similar to many tress located near roadways in King County and it was not leaning at a severe angle."

In short, the appellants' evidence is not sufficient to create a genuine issue of material fact regarding whether the County was on actual or constructive notice of the alleged dangerous condition of the subject tree.

*B. Foreseeability*

Appellants argue that a genuine issue of material fact exists as to whether the County should have foreseen that the subject tree posted a danger to the public.  No notice (either actual or constructive) is required if the danger was one the County should have foreseen and guarded against.  <u>Albin</u>, 60 Wn.2d at 748.  The question of foreseeability goes to the question of whether the defendant owed a duty of care to the plaintiff.  <u>Rikstad v. Holmberg</u>, 76 Wn.2d 265, 268,

456 P.2d 355 (1969).

The appellants' argument regarding foreseeability is similar to their argument regarding constructive notice — that is, they rely on the same "warning signs," as they characterize them, to argue that they created a genuine issue of material fact regarding foreseeability. Appellants contend that because of these "warning signs," the County should have been proactive and closely examined any leaning black cottonwoods in the vicinity when it was aware that several black cottonwoods had fallen in the general vicinity. However, this suggests the County should forage for signs of dangerous conditions along County roads, which is not what the law requires. We rejected this argument in Helmbreck: "As the trial court correctly noted, Helmbreck has provided no authority that the City had a legal duty to inspect the street and inform itself of dangerous conditions. No legal basis has been established for a presumption that the City should have known the vegetation was a dangerous condition." Helmbreck, 15 Wn.App.2d at 54.

For the same reasons appellants did not create an issue of material fact regarding constructive notice, detailed in the section above, they also did not create a genuine issue of material fact regarding foreseeability. They did not demonstrate that the County should have reasonably anticipated the danger based on the small number of other trees that had fallen at different times in the general vicinity, even if some of those trees were the weak-wooded black

cottonwood species.

The trial court did not err by granting the County's motion for summary judgment.[5]

Affirmed.

_Cohen, J._

WE CONCUR:

_Brennan, J_     _Smith, J._

---

[5] Because we hold that the County had no duty, we need not address the appellants' argument that the trial court erred by dismissing DeVoe's claims of negligent infliction of emotional distress nor the County's argument that it was entitled to discretionary immunity.